

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA 94104

SAN FRANCISCO
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Robin Andrews
Senior Counsel
(415) 705-2486
AndrewsR@sec.gov

September 14, 2023

**VIA SECURE E-MAIL**

Alex Spiro, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor,
New York, NY 10010

Re: In the Matter of Certain Purchases, Sales, and Disclosures of Twitter Shares (SF-4519)

Dear Mr. Spiro:

      I write in response to your letter yesterday afternoon, in which you informed us for the first time that your clients ▓▓▓▓▓▓▓▓ and Elon Musk refuse to comply with the lawfully issued subpoenas requiring their appearance for investigative testimony today and tomorrow, respectively. These subpoenas were served nearly four months ago for dates you agreed to, and you made no objections to the subpoenas then. Moreover, you raised no objections to the subpoenas in our recent communications on August 28 and September 5 in which we discussed your clients' scheduled testimony. Indeed, you did not raise any objections until yesterday afternoon, the day before the scheduled testimonies, when you simultaneously informed us that your clients did not intend to appear.  Further, we have received significant additional documents since the prior testimony, and we need to inquire about information in those materials. Your objections are baseless and do not justify your clients' noncompliance.

      We demand that ▓▓▓▓▓▓▓ and Mr. Musk agree to appear for testimony in San Francisco on Tuesday, September 19, and Wednesday September 20, respectively. As noted below, according to multiple media reports, Mr. Musk will be in the San Francisco area early next week. Please let us know by 5 pm PT tomorrow, September 15, whether your clients will appear for their testimony.  If we do not hear from you by then we will consider all of our options, including seeking Court action to enforce the subpoenas. We respond to your objections below.

**Stated Objection 1:**
*As you know, Mr. Musk has already sat for testimony twice in this matter. And despite my attempts to understand what additional information you believe you may glean from a third testimony, it remains unclear why the Staff requires further time diverting Mr. Musk from his significant obligations to companies and shareholders.*

It should come as no surprise that we are seeking another day of testimony from Mr. Musk. You and I have discussed the need for additional testimony from Mr. Musk since at least the end of last year. As you know, Mr. Musk has testified in this investigation on two prior occasions. Mr. Musk appeared remotely for testimony on July 12 and July 27, 2022, for a total of approximately 8 ½ hours of testimony. Since that time, **the SEC has obtained additional documents and information relevant to its investigation** necessitating further time with Mr. Musk so that the SEC may question him about, among other things, the newly obtained material.

On May 23, 2023, you agreed that ▬▬▬▬▬ and Mr. Musk would attend testimonies on September 13 and 14, 2023, respectively. That day, your clients were served with testimony subpoenas for those dates, which explicitly required them to appear in San Francisco. At that time, you did not object to the subpoenas or otherwise question the need for additional testimony from your clients. Indeed, you have not objected to the location of the testimony since May 2023. As indicated above, if the location is the only issue standing in the way of your clients appearing for testimony, please let me know and we can discuss.

On August 28, 2023, you informed me that Mr. Musk had a new September 13 commitment in Washington, DC, and asked as a courtesy that we reschedule those testimonies to September 14, and 15, respectively, to provide Mr. Musk with an additional travel day from Washington. That day, we agreed to move the dates, and your clients were served with amended testimony subpoenas, which like the prior subpoenas required your clients to appear in San Francisco. You did not object to the subpoenas, but for the first time requested a conversation to discuss the need for additional testimony from your clients.

On September 5, you and I had a telephone conversation in which we discussed your clients' scheduled testimony. During that conversation, I reminded you that both of your clients had each appeared for two half-day sessions last year, not full days. I also noted that the majority of documents produced by your clients in this matter were produced <u>after</u> Mr. Musk's last session. I explained that we had additional questions about the two parts of our inquiry: (1) the facts and circumstances leading up to Mr. Musk's initial disclosure of his Twitter shares and subsequent correction; and (2) the facts and circumstances surrounding Mr. Musk's numerous public statements and Schedule 13D filings relating to Twitter in April and May 2022. I also provided additional detail about the areas of inquiry – which I had no obligation to provide – to help you better prepare your clients for these testimonies. Finally, I told you that I estimated that ▬▬▬▬▬ testimony was likely to take roughly a half day, and Mr. Musk's testimony would take at least three quarters of a day. I noted that these estimates depended on your clients' answers and overall cooperation with the testimony process.

At the end of our September 5 conversation, you indicated that you might have follow-up questions about the information I provided. I never heard back from you with any such questions. You raised no actual objections until yesterday, the day before ▇▇▇▇▇▇▇ scheduled testimony.

### Stated Objection 2:
*In the context of an investigation into the timing and substance of a Schedule 13G, enough is enough.*

As you know, our investigation involves more than just the timing and substance of a single Schedule 13 filing. This matter involves a number of such filings by your client in April and May 2022, as well as a number of public statements about the Twitter transaction. The Formal Order of Investigation authorizes us to investigate potential violations of Sections 10(b) and 13(d) of the Exchange Act and Rules 10b-5, 13d-1, and 13d-2 thereunder.

### Stated Objection 3:
*It is also not evident why the Staff seeks in-person testimony in San Francisco —where Mr. Musk does not live—for an unbounded period of time, when other testimony in this matter has been conducted remotely and for finite periods. Similar concerns attend ▇▇▇▇▇▇▇▇▇ testimony.*

As noted above, you have known for nearly four months that the SEC intended to take Mr. Musk and ▇▇▇▇▇▇▇▇ testimony in person at the SEC's offices in San Francisco. The SEC has statutory authority to compel attendance of witnesses for investigative testimony in any place in the United States. *See* 15 USC 78u(b).

In May 2023, you asked whether we could conduct these testimonies in Austin, Texas, where your clients live. At that time, I replied that this would not be acceptable and insisted on our offices in San Francisco. You did not formally object and certainly gave no indication that your clients would refuse to appear in San Francisco. We also fail to understand how testimony in San Francisco poses any particular burden on Mr. Musk considering that he is the majority owner of Twitter/X Corp. and the CEO of Tesla, both of which have major operations in the San Francisco Bay Area. We also note that less than 12 hours after receipt of your letter informing us that Mr. Musk would not appear for his testimony in San Francisco on Friday, the Washington Post reported that Mr. Musk would be in the San Francisco Bay Area for a meeting on Monday.[1]

Separately, at no point did we request or insist on "an unbounded period of time." In our September 5 conversation I estimated – with the appropriate caveats – that ▇▇▇▇▇▇▇▇ testimony would take roughly a half day, and Mr. Musk's testimony would take at least three quarters of a day.

---

[1] https://www.washingtonpost.com/technology/2023/09/14/musk-antisemitism-x-twitter-adl-netanyahu/

**Stated Objection 4:**
*In light of the Commission's history of using its subpoena power to harass Mr. Musk and those connected to him, including ▇▇▇▇▇▇▇, these circumstances suggest the Commission is not pursuing this testimony in good faith.*

Your suggestion that the SEC is not pursuing the testimony of your clients in good faith is without merit. The SEC has properly used its subpoena power to conduct its investigation into potential violations of the federal securities laws by Mr. Musk and others. This is not the first time that Mr. Musk has characterized legitimate government investigatory steps as "harassment." Those arguments have been rejected. *See SEC v. Musk*, Case No. 1:18-cv-08865-LJL (S.D.N.Y.), Dkt. No. 97.

**Stated Objection 5:**
*In addition to these serious concerns, yesterday a 600-page biography of Mr. Musk containing new information potentially relevant to this matter was published. Counsel require time to review this material and expect that the Commission may as well.*

The publication of Mr. Musk's biography is not a legitimate basis for Mr. Musk and ▇▇▇▇▇ to fail to comply with a lawfully issued subpoena. In addition, the publication date of the biography was announced on May 18, 2023, nearly a week <u>before</u> your clients agreed to appear for testimonies on September 13 and 14. You waited to raise this issue as an objection until the day before ▇▇▇▇▇▇▇ scheduled testimony.

Finally, Mr. Musk publicly stated on September 10, 2023 that he was in possession of a copy of the book, which was published on September 12. You and your clients had sufficient time to review the book and identify any portions relevant to this investigation.

If your clients do not agree <u>by 5 pm PT tomorrow</u> to appear for testimony on Tuesday, September 19, and Wednesday September 20, respectively, we will consider all available remedies, including a subpoena enforcement action.

Sincerely,

Robin Andrews
Senior Counsel