1  MELISSA ARMSTRONG (Tex. Bar No. 24050234)
     ArmstrongMe@sec.gov
2  100 F Street, NE
   Washington, DC 20549
3  Telephone: (202) 551-4724
   Facsimile: (703) 772-9292
4
   MONIQUE WINKLER (Cal. Bar No. 213031)
5  BERNARD B. SMYTH (Cal. Bar No. 217741)
     SmythB@sec.gov
6  ROBIN ANDREWS (Ill. Bar No. 6285644)
     AndrewsR@sec.gov
7  44 Montgomery Street, Suite 2800
   San Francisco, CA 94104
8  Telephone: (415) 705-2500
   Facsimile: (415) 705-2501
9
   Attorneys for Applicant
10 Securities and Exchange Commission

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16 SECURITIES AND EXCHANGE              Case No. 3:23-mc-80253-LB
   COMMISSION,
17                                      **SECOND DECLARATION OF ROBIN
              Applicant,                ANDREWS IN SUPPORT OF
18                                      SECURITIES AND EXCHANGE
        v.                              COMMISSION'S APPLICATION FOR AN
19                                      ORDER COMPELLING COMPLIANCE
   ELON MUSK,                           WITH AN ADMINISTRATIVE
20                                      SUBPOENA**
              Respondent.
21

22

23

24

25

26

27

28

## SECOND DECLARATION OF ROBIN ANDREWS

I, Robin Andrews, declare:

1.       I am a Senior Counsel in the San Francisco Regional Office of the Securities and Exchange Commission ("Commission"). I am an attorney duly admitted to practice in the State of Illinois. I am making this Declaration based upon facts within my personal knowledge, and to which I am competent to testify if called upon to do so.

2.       I submit this Declaration in support of the Commission's Reply in support of its Application for an Order Compelling Compliance with an Administrative Subpoena directing respondent Elon Musk ("Musk") to comply with an investigative subpoena served upon him in connection with the Commission's non-public investigation entitled In the Matter of Certain Purchases, Sales and Disclosures of Twitter Shares (Internal File No. SF-4519) (the "Investigation").

3.       Musk's counsel states in his Declaration: "On November 18, 2019, the same day that the Commission closed the investigation into Mr. Musk's 2018 tweet, it opened a new investigation into SpaceX." Dkt. No. 25 at ¶ 12. Musk's counsel does not identify the name or internal SEC number. I have reviewed a subpoena served on SpaceX, Inc. in December 2019 in the SEC investigation with internal SEC number SF-4322. I also reviewed the SF-4322 Formal Order of Investigation, which is dated November 18, 2019. According to a cover letter I reviewed, Musk's counsel received a copy of that SF-4322 Formal order of Investigation in December 2019. Based on this information, it appears that the reference to "a new investigation into SpaceX" is the SF-4322 investigation. The title of the SF-4322 Formal Order of Investigation is the name of a public company, not SpaceX, Inc., and SpaceX is not named in the SF-4322 Formal Order.

4.       According to the public SEC EDGAR site (https://www.sec.gov/edgar), from April 2022 to July 2022, Musk filed with the SEC eleven Schedule 13 filings related to his purchases of Twitter stock or the acquisition of Twitter.

5.       On July 12, 2022, the SEC staff conducted Musk's investigative testimony, which I attended. During this testimony, Musk's counsel objected to, and represented that he would instruct Musk to not answer, any questions relating to: (1) any events taking place after April 5, 2022 (with the exception of an April 11, 2022 Schedule 13, to which he did not object); or (2) Musk's

1   acquisition of Twitter, including the April 25, 2022 acquisition agreement or subsequent SEC filings

2   related to that agreement. Musk's counsel claimed that the language in Section II of the Formal Order

3   "The Commission has information that tends to show that from at least March 24, 2022 to April 5,

4   2022" prevented the SEC staff from inquiring into either of those two areas.

5           6.      In response to those objections, during the testimony I informed Musk's counsel that

6   the words "at least" modifying the 11-day date range March 24, 2022 to April 5, 2022 clearly

7   intended for that date range to be non-limiting. Further, I cited a passage in Section III of the Formal

8   Order that authorized the SEC staff to investigate potential ongoing violations taking place after the

9   date of the Formal Order (April 17, 2022) as further evidence that the 11-day date range was not

10  intended to be limiting. Finally, during the testimony I told Musk's counsel, according to the

11  transcript of that testimony, "I'll refer you back to the Formal [Order of] Investigation and the

12  potential statutes that we're looking into, and obviously there are other Schedule 13D's and G's being

13  filed here too and other statements being made, and it's clearly within our jurisdiction to ask about

14  conduct that implicate all of those things." Musk's counsel did not withdraw his objections or his

15  instruction that Musk not answer further questions. As a result, the remainder of Musk's testimony

16  was suspended, and the SEC staff was unable to complete its questioning.

17          7.      Later on July 12, 2022, I sent an email to Musk's counsel noting that the Formal Order

18  authorized the SEC staff to inquire into: (1) whether Musk "failed to file with the Commission all

19  information required by Schedules 13D and 13G and any amendment thereto in connection with his

20  ownership of Twitter stock" including numerous filings in April and May 2022; and (2) whether

21  Musk violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder." A true and correct

22  copy of that email is attached as Exhibit 1. In response to this email, on July 13, 2022 Musk's counsel

23  sent the SEC staff a letter, a copy of which is attached to the attorney declaration submitted in support

24  of Musk's Opposition. *See* Dkt. No. 25-4.

25          8.      On July 15, 2022, the Commission issued a Corrected Formal Order in this matter.

26  The only change from the April 17, 2022 Formal Order was removal of the phrase "to April 5, 2022"

27  from the timeframe of Section II. *See* Dkt No. 25-3 (4/17/2022 Formal Order), Dkt No. 25-5

28  (7/15/2022 Corrected Formal Order). After transmitting the Corrected Formal Order to Musk's

counsel, he represented that he no longer had objections to: (1) questions asked regarding events taking place after April 5, 2022; or (2) questions asked relating to the Twitter acquisition. The parties then scheduled a second session of Musk's testimony to continue the July 12, 2022 line of questioning.

9.     On July 27, 2022, the SEC staff continued Musk's investigative testimony. During this testimony, I asked Musk about a number of his May 2022 public tweets relating to the Twitter transaction, including questions about the accuracy of the assertions in those tweets. Musk's counsel attended this testimony and did not object to questions about these topics.

10.    In August and September 2022, Musk and his counsel were occupied with an expedited discovery schedule in litigation in the Delaware Court of Chancery, which settled shortly before trial in October 2022. *Twitter, Inc. v. Musk*, C. A. 2022-0613-KSJM (Del. Ch.). In January and into early February 2023, Musk and his counsel were occupied with a jury trial in a class action lawsuit in this district. *In Re Tesla Inc., Securities Litigation*, Case No. 18-cv-04865-EMC (N.D. Cal.). Given the time demands these matters imposed on Musk and his counsel, the SEC staff did not attempt to schedule Musk's testimony before or immediately after these litigated cases.

11.    On May 18, 2023, it was publicly announced that the Musk biography *Elon Musk* by Walter Isaacson would have a release date of September 12, 2023. According to the Sources section of the Musk biography, Musk was a source of much of the information reflected in that book. A number of chapters relate to Musk's acquisition of Twitter.

12.    On September 5, 2023, Musk's counsel asked me about the intended topics for Musk's September 15, 2023 testimony. I informed him that the SEC staff intended to ask Musk additional questions about the two general areas of this investigation covered previously: (1) the facts and circumstances leading up to Musk's initial disclosure of his Twitter shares and subsequent correction; and (2) the facts and circumstances surrounding Musk's numerous public statements and Schedule 13 filings relating to Twitter in April and May 2022. The SEC staff intended – and still intends – to ask Musk questions related to these areas, specifically new information the SEC staff obtained from Musk and third parties after his last testimony in late July 2022, and any specific items within those two areas not previously addressed.

13.     On October 30, 2023, the SEC staff conducted the investigative testimony of Musk's wealth manager, which I attended. During this testimony, I asked the witness about a written communication he had with Musk related to the acquisition of Twitter. This communication was directly quoted in the September 2023 biography. Musk's wealth manager was unable to recall that communication. Although this communication was responsive to document subpoenas the SEC staff served upon both Musk and his wealth manager in April 2022, neither produced this communication to the SEC. Counsel to Musk and his wealth manager represented to the SEC staff in writing that both Musk and his wealth manager have produced all responsive documents that are in existence today, and that his clients do not have a copy of this written communication.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was signed on November 16, 2023.

_____

ROBIN ANDREWS