# Andrews, Robin

| | |
|---|---|
| **From:** | Andrews, Robin |
| **Sent:** | Tuesday, July 12, 2022 4:59 PM |
| **To:** | alexspiro@quinnemanuel.com; rachelfrank@quinnemanuel.com |
| **Subject:** | SF-4519 Formal Order smail |

Alex:

Today during Mr. Musk's testimony you objected to (and indicated an intention to instruct Mr. Musk to not answer) any questions relating to events taking place after April 5, 2022 (with one exception). You claimed that the timeframe after April 5, 2022 was beyond the scope of our investigation, citing this line in the Formal Order: "The Commission has information that tends to show that from at least March 24, 2022 to April 5, 2022." As I noted in response, the words "at least" demonstrate that this date range (comprising only 11 days) was not exhaustive. Further, I cited this passage in Section III: "ORDERS, pursuant to the provisions of Section 21(a) of the Exchange Act that a private investigation be made to determine whether any persons or entities have engaged in, or <u>are about to engage in</u>, any of the reported acts or practices or any acts or practices of similar purport or object". This language clearly orders the SEC staff to investigate conduct that took place, for example, <u>after</u> the date of the Formal Order (April 17, 2022).

You also objected to (and indicated an intention to instruct Mr. Musk to not answer) any questions relating to the Twitter Merger agreement on April 25, 2022, stating that the scope of our investigation is effectively limited to Mr. Musk's April 4, 5, and 11 Schedules 13D and 13G, and the question of whether Mr. Musk was an active or passive investor. In response, I cited to the two statutes that the Formal Order authorizes us to inquire about. In particular (and as I stated in our conversation), Part II(B) of the Formal Order states: "In possible violation of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2 thereunder, Elon Musk may have failed to file with the Commission all information required by *Schedules 13D and 13G and any amendment thereto* in connection with his ownership of Twitter stock." (emphasis added). On April 26, 2022, Mr. Musk filed a Schedule 13D/A form (an amendment to the initial Schedule 13D) that made representations about the Twitter merger agreement. Mr. Musk also filed Schedule 13D/A forms on May 5, 2022 and May 25, among other dates. Part II(C) of the Formal Order, also gives the SEC staff broad authorization to investigate potential violations of Section 10(b):

> *C. In possible violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Elon Musk and/or other persons or entities, directly or indirectly, in connection with the purchase or sale of certain securities, may have been employing devices, schemes, or artifices to defraud, making untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were or are made, not misleading, or engaging in acts, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon any person. In connection with these activities, such persons or entities, directly or indirectly, may have been, among other things, trading in the securities of Twitter on the basis of material nonpublic information, disclosing to others material nonpublic information regarding Twitter in breach of a fiduciary or other duty arising out of a relationship of trust and confidence, or making false statements of material fact and omitting to disclose material facts concerning, among other things, Musk's holdings of Twitter stock.*

The above language gives the SEC staff authority to investigate a broad scope of conduct. See, e.g., *MBIA Inc. v. Federal Insurance Company*, 652 F.3d 152, 160-61 (2d Cir. 2011) (holding that an SEC formal order authorized the SEC to investigate two transactions, even though the transactions were not specifically referenced in the formal order); *cf. RNR Enters., Inc. v. SEC,* 122 F.3d 93, 98 (2d Cir. 1997) (concluding that a formal order predating company under investigation included the company); *SEC v. Marin*, 982 F.3d 1341, 1353 (11th Cir. 2020) ("The SEC's investigative powers are not limited to the specific entities named in a formal order."). The *MBIA* case relied on the "of similar purport or object" language that also appears in this formal order. *MBIA, Inc.*, 652 F.3d at 161 ("we conclude that the plain meaning of the

formal order includes these transactions within its scope because they involved a course of business 'of similar purport or object' to that described in the formal order.").

Please confirm that you have withdrawn your objections above, and that when we reconvene tomorrow at 10:00 am PT, you will permit Mr. Musk to answer questions about events taking place after April 5, 2022, and that do not directly relate to Mr. Musk's April 4, 5, and 11 Schedules 13D and 13G, and/or the question of whether Mr. Musk was an active or passive investor.

Robin Andrews
Senior Counsel
U.S. Securities and Exchange Commission
Division of Enforcement
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
415-705-2486 (direct)
andrewsr@sec.gov