1               UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Laurel Beeler, Magistrate Judge

4

5   SECURITIES AND EXCHANGE          )
    COMMISSION,                      )
6                                    )
                                     )
             Plaintiff,              )
7                                    )
    vs.                              )      No. 23MC80253-LB
8                                    )
    ELON MUSK,                       )
9                                    )
             Defendant.              )
10  _____ )

11                                   San Francisco, California
                                     Thursday, December 14, 2023
12

13           TRANSCRIPT OF THE OFFICIAL ELECTRONIC
         SOUND RECORDING  10:39 - 11:02 = 23 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:

17                          United States Securities and
                              Exchange Commission
18                          44 Montgomery Street
                            Suite 2800
                            San Francisco, California
19                            94104
                        BY:  BERNARD B. SMYTH, ESQ.
20                      BY:  ROBIN ANDREWS, ESQ.

21                          United States Securities and
                              Exchange Commission
22                          100 F Street, Northeast
                            Washington, DC 20549
23                      BY:  MELISSA ARMSTRONG, ESQ.

24

25           (APPEARANCES CONTINUED ON NEXT PAGE)

2

1  <u>APPEARANCES</u>:  (Cont'd.)

2  For Defendant:
                          Quinn Emanuel Urquhart
3                            Sullivan
                          1300 I Street, Northwest
4                         Suite 900
                          Washington, DC 20005
5                     BY:  CHRISTOPHER MICHEL, ESQ.
                      BY:  RACHEL FRANK, ESQ.
6

7  Transcribed by:          Echo Reporting, Inc.
                          Contracted Court Reporter/
8                         Transcriber
                          echoreporting@yahoo.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Thursday, December 14, 2023</u>                          <u>10:39 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4           THE CLERK:  Calling Miscellaneous Action 23-80253,

5  Securities and Exchange Commission versus Musk.

6       Counsel, please state your appearances for the record.

7           MR. SMYTH:  Good morning, your Honor.  Bernard

8  Smyth along with Melissa Armstrong and Robin Andrews on

9  behalf of the SEC.

10          THE COURT:  Good morning.

11          MR. MICHEL:  Good morning, your Honor.  Chris

12  Michel on behalf of Elon Musk, joined by Rachel Frank.

13          THE COURT:  Good morning.  So how can I help?  You

14  know, I'm just going to tell you, I appreciate the

15  arguments.  It was -- you don't know me, but I know the

16  facts.  You don't need to tell me the facts.  I've already

17  nailed them to an order, and I just -- you know, the SEC --

18  the burdens are -- appreciate the appointments at the last

19  argument, but the SEC has broad -- you know, broad

20  investigatory powers.  They have the orders that authorize

21  the investigations.

22       I understand -- whether it's gamesmanship or fatigue,

23  it doesn't matter.  I understand the frustration of ongoing

24  investigations, and it's -- I'm not going to disrupt the

25  SEC's investigative process, and so the tentative is to

4

1 enforce the subpoenas and just say that -- and I'm not going
2 to -- you know, I'm not going to knock it out on the
3 appointments -- I mean, you could make whatever additional
4 argument you want, but it's just not going to happen.  No
5 case -- I mean, it's an interesting argument, but no.

6      And then, the issue is, you guys just have to work out
7 where, you know, they've offered all the accommodations that
8 your client wanted along the way, whether it's in Texas or
9 here.  What I was going to tell you -- and I did want to at
10 least, even though I'm telling you what I think, I did -- I
11 -- and usually I have oral argument because my clerk and
12 (indiscernible) it's important, so I do it, from a process
13 perspective, but it just -- it's not working out, and it's
14 in San Francisco in February.

15      And if you do work it out, because they offer Texas --
16 I mean, I'm just thinking February, because January seems to
17 close, and so my -- the order I wrote was "Grant the
18 application.  Enforce the subpoena for testimony," went
19 through all the facts, no on the appointments log.  Talk,
20 work it out in the next week, where it's going to be, and if
21 you can't work it out, I think, tell me in a letter and I'll
22 tell you, but my suggestion would probably be San Francisco
23 or Texas, whatever you wanted to do in February.  Okay.

24      So that's where I am.  That goes your way, from the
25 SEC's way.  You can tell me why you think that I'm wrong.

5

1          MR. MICHEL:  Thank you, your Honor.

2      I guess there's two general issues --

3          THE COURT:  Yes.

4          MR. MICHEL:  -- we'd like to cover, respecting

5  where you're starting from.  You know, we recognize it's

6  rare to deny enforcement of an SEC subpoena, but the cases

7  are clear that the SEC has to be reasonable, and we do

8  think, when you look at this case and when you look at the

9  other cases, the SEC has crossed the line from persistence

10 into obsession with respect to Mr. Musk.

11     There's this case, there's the case going on in New

12 York, and Mr. Musk, who, by any definition, is one of the

13 busiest people in the world, with serious obligations to his

14 shareholders and employees, has already sat, not once, but

15 twice, for eight hours of testimony on these issues.  I

16 really do think it's unreasonable for the SEC to get a third

17 bite at the apple here.

18          THE COURT:  I completely appreciate the

19 frustration.  I do.

20     I once had a development case which had been stalled

21 for 10 years in San Francisco, and I'm (indiscernible) from

22 (indiscernible) perspective.  Judge Wilken asked me to do a

23 settlement conference, and later, after something like 19

24 pleadings, including the government and Sunshine Act

25 meetings, where people attended from the Board of

6

1  supervisors.  I asked Judge Wilken, "Why did you send it to

2  me?"  She said, "You're a government lawyer.  You understand

3  bureaucracy."

4       And so I just -- I appreciate the frustration, and the

5  SEC's investigative subpoena power is broad.  It's not much

6  to show it.  I understand, and it goes with the territory,

7  which is what the SEC would say within the context of all

8  the different businesses.  Maybe it will be over eventually.

9            MR. MICHEL:  If I could say one more thing on that

10  point --

11            THE COURT:  Yes.

12            MR. MICHEL:  -- and then I'd like to turn to the

13  appointments clause, and maybe I can offer a few thoughts on

14  that.

15            THE COURT:  Yes.

16            MR. MICHEL:  I think what's distinctive about this

17  is that Mr. Musk has already sat twice on issues that were

18  available to the SEC last time.  In fact, in the

19  declarations that have been submitted, every -- all of the

20  dates occurred before the prior testimony.

21            THE COURT:  And the Government would say -- the

22  Commission would say that (indiscernible) big production

23  afterwards, and that's what it wants to ask Mr. Musk about.

24  So it's not old territory, it's new territory.  Right?

25            MR. SMYTH:  Yes, your Honor.  And I would at some

7

1  point also want to point out that -- I wanted to be clear

2  that there's no restrictions on the testimony that you're --

3  that you're ordering here.

4           THE COURT:  No, I understand that, because, when

5  you have new information that could implicate previous

6  territory and -- at some point, though, I mean, having sat

7  through SEC testimony myself -- at some point, you guys just

8  have to kind of get through it and stop, because it just

9  becomes -- it just becomes -- it is a burden even if it's

10  not a legal recognizable for -- and I know you know that.

11  It's the -- it's the last (indiscernible).

12           MR. SMYTH:  I do think there's a reasonableness

13  limitation on (indiscernible).

14           THE COURT:  But you understand how I just never --

15  any judge is never going to be -- have the seat in the house

16  on a record like this, despite the good work that you did

17  putting in declarations on both sides about exactly what

18  happened and when.  To second-guess the SEC's 18-month

19  investigation into securities fraud, not just Rule 13(d)

20  disclosures but the larger context, no way, given the case

21  law, is the Court going to disrupt that, which gets us to

22  the appointments clause.

23           MR. MICHEL:  Well, I'm happy to turn to the

24  appointments clause, and I think this is a serious

25  constitutional argument.

8

1          THE COURT:  It's super interesting, and no one has
2   ever raised it before in the context of the staff attorneys
3   issuing a subpoena, ALJ context, totally different, but tell
4   me why --
5          MR. MICHEL:  Well --
6          THE COURT:  -- because this is a staff attorney,
7   acting under congressional delegation to the Commission, to
8   the Director of Enforcement, and then as a -- delegated to
9   the staff attorney (indiscernible), and they're -- they just
10  do not seem to be the kinds of the officers that courts have
11  applied the appointments clause.  It just doesn't seem at
12  all in that category, and I'm unaware of any case that's
13  close to the facts of this case.  Well, you guys didn't cite
14  anything.  There's nothing.  The cases that are cited are
15  the judge-like cases.
16         MR. MICHEL:  Well, I think there's also, with
17  respect, your Honor, the prosecutor-like cases.
18         THE COURT:  Right, the prosecutor cases, which I
19  did want you to ask you to look at that a little.  I know
20  what they say.  Right.  Okay.
21         MR. MICHEL:  And I think, you know, 10 or 15 years
22  ago, these arguments might have been less persuasive.  This
23  is an area of the law that's changing quickly.
24         THE COURT:  No, I know.  I know it is.  I know it
25  is.

9

1        MR. MICHEL:  The Supreme Court has heard a number
2  of cases on this -- these issues in the last few years, and,
3  in fact, there's the Jarkesy case pending before the Court
4  right now on the removability issue, among others, for SEC
5  ALJs.  You know, just to start with the appointments clause,
6  the --

7        THE COURT:  I'm actually somewhat sympathetic on
8  the ALJ kind of concept to it, because I don't think you
9  should be able to be insulated.  I mean, it's a reaction,
10  not any considered reaction, but I'm just having a tough
11  time seeing -- so I think the prosecution context is the one
12  that works better for you, in the ALJ context.

13        MR. MICHEL:  Sure.  And I think part of the
14  prosecution context, as the Court's cases have said, include
15  the prosecutor's authorities to subpoena witnesses, compel
16  testimony, subpoena documents, and those are the same
17  authorities that are at issue here.  It's right in the text
18  of the formal order.  It says, and I'll just quote --

19        THE COURT:  It would be a great way for a court to
20  shut down the ability of the Government to investigate
21  anything.  It would then require them to -- so I definitely
22  see the strength of that argument and why you'd want to make
23  it, or the appeal of that argument.

24        MR. MICHEL:  You know, quite respectfully, I think
25  it would not shut down the ability of the Government to

10

1  investigate.  It would simply require that the Government

2  investigators be appointed pursuant to the procedures that

3  the Constitution requires.

4      The reason for the appointment and removal protections

5  in the Constitution is to ensure that weighty decisions like

6  this, decisions affecting people's liberties and people's

7  rights, are made by those accountable to the public,

8  ultimately, and under the proper supervision of the

9  president.

10      These protections were made for cases like this, where

11  the SEC staff, which is running this investigation, you

12  know, have, in our view, gotten out of control.  You know,

13  as one respected commentator said, it seems that there's an

14  Elon Musk division of the SEC, and if that division is going

15  to exist, it has to at least exist consistent with the

16  protections of the Constitution.

17      So I think, as a doctrinal matter, the question is

18  whether these SEC staff are officers of the United States

19  who have to be appointed pursuant to the appointments

20  clause.  I don't think they have any argument that they were

21  appointed pursuant to the appointments clause, so the whole

22  case turns on whether they have exercised significant

23  authority of the United States, as the Court said in Lucia

24  and Buckley is the test, and if you look at what they're

25  doing in this case, on the face of the formal order,

11

1   subpoenaing witnesses, compelling attendance, taking

2   evidence, requiring the production of books, papers,

3   records, that's very similar to what prosecutors do,

4   including even prosecutors in one-off cases like the

5   independent counsel, or a prosecutor in a contempt case.

6       I think we cite these cases at page 17 and 18 of our

7   brief, you know, and what I want to underscore is, the Court

8   has -- the Supreme Court has -- you know, "Officer of the

9   United States" might sound like a big title, but people who

10  have been found to be officers in the past include the

11  Postmaster General, the Clerk of the Court, which, no

12  offense to anyone, you know, is not always viewed as a major

13  position.  The Supreme Court said in Buckley, "If those

14  positions are officers, surely the investigators in this

15  case are officers, too."

16      So, again, we're not trying to shut down the

17  investigation.  We're --

18          THE COURT:  No, I know.  It's a -- it would be a

19  revamping of the way investigations are done in many

20  agencies, not just the SEC.

21          MR. MICHEL:  Well, the last point I might make on

22  that -- and, of course, I'm happy to let my friends from the

23  Government respond -- is, you know, this is really not that

24  unfathomable.  Before 2009, the system at the SEC was that

25  the Commissioners would issue the formal order, and that

1   would remove the appointments clause problem in this case.

2   So this is not something that's been happening since William

3   O. Douglas in the 1930s was the SEC Commissioner.  This is

4   something in the last 15 years.  It's hardly unthinkable

5   that the Commissioners could issue the formal order

6   appointing the staff in this case, and, in fact, that's the

7   system that the Founders wanted.  They wanted the

8   accountable actors to be the ones making these decisions,

9   and we don't think that that's too much to ask in this case.

10          THE COURT:  Okay.  I understand your argument.  So

11  why don't you just -- I think -- you know, just the

12  appointments.

13          MR. SMYTH:  Yes, your Honor.  I think you had it

14  right at the outset, which is the cases that they're relying

15  on that fall under the appointments clause here really are

16  focused more on the exercise of judge-like powers.  So, for

17  example, in the Lucia case, the Supreme Court found that

18  ALJs were constitutional officers for the purposes of the

19  appointments clause.  In the Freitag (phonetic) case, the

20  Supreme Court found that special tax judges -- special trial

21  judges in the Tax Court were officers for the purpose of the

22  appointments clause.  The cases they're referring to

23  regarding others I don't believe fall within the

24  appointments clause arguments that they're making.  They may

25  be related to other matters.  And the kinds of powers that

1  they've outlined, taking testimony, administering oaths,

2  that's just a small list, a small selection from a much

3  broader list that the Supreme Court has looked to.  They

4  noticeably omit things like the ability to preside over

5  hearings, deciding on the admissibility of evidence, making

6  factual findings, enforcing subpoenas or other discovery

7  orders.  Those are all powers that the Supreme Court has

8  found are the exercise of significant governmental

9  authority.  Those are not powers that the SEC staff has.

10 That's why we're before your Honor, to enforce an SEC

11 subpoena, because we don't have that power ourselves.  So I

12 think a fair look at the appointments clause-based cases

13 here demonstrates that SEC staff is nowhere close to a

14 constitutional officer for the purposes of the appointments

15 clause.

16          THE COURT:  Okay.

17          MR. MICHEL:  I think, with respect, that's

18 focusing on only one narrow corner of the --

19          THE COURT:  You say they're not looking at their

20 prosecution cases?

21          MR. MICHEL:  Right.  I mean, of course it can't be

22 the rule that the appointments clause only applies to

23 judge-like features.  You know, I think that the reasons

24 there aren't more cases about prosecutors is because those

25 are the easy cases.  I mean, it's obvious that prosecutors,

14

1  who can compel witness testimony and compel the production

2  of documents -- that's why there's a federal statute that

3  says AUSAs have to be recorded by the Attorney General.

4       You know, it's true that the recent Supreme Court cases

5  have been the ALJ-type cases, but I think it would be a real

6  mistake to read that as the entirety of the appointments

7  clause doctrine.  You know, there are -- Morrison v. Olson

8  (phonetic), for example, does talk about the appointments

9  clause significance of the special prosecutor, and, of

10 course, there's a whole other body of cases that deal with

11 it.  I think you have to look at what the functions are, and

12 here these are quintessential prosecutorial functions,

13 which, again, we're not saying they can't do this.  All

14 we're saying is they have to be appointed.

15          THE COURT:  But you're saying the Commission --

16 that Commissions should have signed the formal order and

17 then everything will be fine?

18          MR. MICHEL:  Well, I can't quite say everything

19 would be fine.  I think there would be no appointments

20 clause problem.  I do think there would still be a --

21          THE COURT:  The other issues.  Right.  Okay.

22          MR. MICHEL:  There would still be a removal

23 protection problem.  I'd like to get that out, if I could.

24          MR. SMYTH:  On the formal order, I mean, I don't

25 think that's something that they challenged in their papers,

*Echo Reporting, Inc.*

1 the validity of the formal order, and I would note here, the

2 validity of the formal order --

3          THE COURT:  I don't know that they're -- well --

4          MR. SMYTH:  I would not here that the formal order

5 was signed by the Director of Enforcement, who serves at

6 will to the Commission itself, which is found to be the head

7 of an agency for purposes of the appointments clause.  So I

8 don't see the issue of the formal order, and I don't think

9 that that is addressed in their papers.

10          MR. MICHEL:  The appointments clause allows three

11 sets of appointments, the president, a court of law, and the

12 head of a department.  The Director of Enforcement is none

13 of those things, so that argument doesn't work.

14          THE COURT:  And I think they did say that in their

15 opposition.  (Indiscernible.)  Okay.  Any --

16          MR. MICHEL:  One more point, if I could get it

17 out.  On removal, the Supreme Court has also said -- and

18 this is the issue that's before the Court right now in

19 Jarkesy, and we do think there's a lot to be said for simply

20 waiting to see how the Supreme Court resolves it.  The Court

21 has said you cannot have two levels of for-cause protection

22 between the president and the officer, and in this case,

23 even if the Commission did sign the formal order, you would

24 have that problem, because you have a layer of for-cause

25 protection between the president and the SEC.

1   That's always existed.  The Court recognized that in

2 Free Enterprise Fund (phonetic) and Lucia.  Then you have

3 another level of for-cause protection between the Commission

4 and the staff in this case.  That's exactly the issue before

5 the Court in Jarkesy, except it's the ALJ and not the staff,

6 but, of course, if we're right that -- we agree, if we're --

7 if you don't agree with us that they're officers, then this

8 argument is off the table.

9         THE COURT:  Right.  Exactly.

10        MR. MICHEL:  But, because we think they are

11 officers, and because they are officers for some of the same

12 reasons that the ALJs were and the prosecutors are, you

13 know, this is an argument that I think needs to be grappled

14 with, also, and, again, there are good reasons for this

15 protection.

16   Again, it's to make sure that the staff are properly

17 supervised.  These are weighty matters, and, you know, the

18 judgment of the Constitution is that elected and accountable

19 officials have to ultimately be in charge, and I don't think

20 they, with respect, have much of an answer to this, other

21 than saying they're not officers.

22        THE COURT:  Well, because they're officers, they

23 say the (indiscernible) issue doesn't kick in

24 (indiscernible) argument in their reply brief.  I will look

25 at -- one thing I'll do is I'll look at the prosecution

1   cases on 17 and 18 of your opposition.  I didn't really look

2   at that argument super closely.  Do you have anything you

3   want to weigh in on?  You know, because I -- the ALJ part of

4   it, that kind of authority that's given to, you know, quasi,

5   you know, judicial-type roles is different, and then there's

6   the argument that this is akin to prosecutors.  That's why

7   AUSAs are appointed by the AG, essentially.

8          MR. SMYTH:  Yes, your Honor.  I think SEC staff

9   attorneys more closely fall in line with the informative and

10  investigative functions that are referenced in <u>Buckley</u> was

11  falling outside of constitutional officers and more in the

12  realm of employees, which is what SEC staff have always been

13  understood to be.

14         MR. MICHEL:  Your Honor, if I might make just one

15  point on <u>Buckley</u>, and a related point, because we, of

16  course, didn't have a chance to respond to the Government's

17  arguments on this, and if it would be helpful to the Court,

18  we'd be happy to file a short supplemental brief that

19  responds to that, but I do think the <u>Buckley</u> argument -- I

20  took note of it, too.  It's quite mistaken.  I mean, if you

21  look at pages 137 and 138 of the <u>Buckley</u> opinion, it says

22  that investigators and information gatherers are not

23  officers when they're gathering information in support of

24  legislation.  So that's a very different issue.  That was a

25  question about whether the FEC, as it was then constituted,

1  in its policy making and rule making, could gather

2  information, and, of course, the Supreme Court has drawn a

3  sharp line between the legislature's power to gather

4  information for lawmaking, on the one hand, and law

5  enforcement on the other hand.  That's the Trump v. Mazars

6  case from a couple of years ago, for example.

7          THE COURT:  I need to read the case a little bit

8  more.  I mean, arguably, you'll make a better argument than

9  I will, but this idea that they have been -- just the way

10 the SEC works.  When it does bring the formal charges, it's

11 all the Commission, unless you have -- unless the Commission

12 makes its decision on formal charges.  It's really hard to

13 back that -- back off that, even if staff takes the view

14 of -- I mean, that's just how it works.

15     Even if staff takes a different view, as especially

16 with parallel investigations as they unfold, it could very

17 hard to walk back the charging decision, because it's really

18 at the Commission level.  And so you're saying, really, that

19 just the function of the staff is much more of the

20 information gathering, which makes it different than the

21 AUSA-type function, which is much more of a decision-making

22 function that's different than the way it actually works in

23 practice at the SEC with the way the investigations get

24 done.

25     So, I think that that employee argument is a pretty

19

1  good one, and the inferior officer argument is very
2  interesting, and I don't see it in the SEC context, but I
3  will look at that argument a little more closely, but on the
4  employee versus superior officer, in the context of --
5  because I did start to look at those cases last night, and
6  I've been unable -- I will look at it again before I issue
7  any order, but I do understand the argument, and I do think
8  that the Commission's argument is how I see the way the SEC
9  functions, through its staff attorneys.
10        And I also -- I do appreciate the "why" of the
11  argument.  I always said -- think in cases, "What's going on
12  here, and why does it matter?"  And I understand every case
13  is a drop in a larger context of other cases, and other
14  investigations, and other -- and a larger interest in not
15  being subjected to continual investigations.  It does seem
16  to me that this is a small issue, not a large issue, but, I
17  mean, it may be an issue that, you know, rips (sic) in a
18  different context, in a different case, in matters for those
19  reasons, but you've got one more four-hour deposition -- one
20  more day of depositions to survive and it's over, and it
21  seems unlikely that there's going to be anything more other
22  than hassle that (indiscernible).
23        MR. MICHEL:  Well, I'm glad to -- I am glad to
24  hear that that is all you have in mind, because I do think
25  there's a risk, as you alluded to earlier, your Honor, of ad

20

1    infinitum, you know, deposition or testimony, followed by

2    documents, followed by testimony, followed by documents, you

3    know, and that's certainly the pattern that's unfolded so

4    far.

5           THE COURT:  Well, the issue is, what can the Court

6    do about it, leaving aside the appointments issue?  There's

7    not a lot, except to say, you know, it's better -- it's a

8    better practice to try to not -- it's a better practice,

9    even if it can't be a court (indiscernible) rule.  We're

10   trying to make a call in a year.  That's what my rule used

11   to be, try to make a call in a year, and if you can't, just

12   everybody's interest is better served by moving on.  But

13   that's not something I can -- I can warrant.

14       And so people have a lot of work, and it is -- anyway,

15   it is how -- it is how the Government works.  All right.

16   I'll take the matter under submission and I appreciate your

17   coming in.

18           You wanted to --

19           MR. SMYTH:  I just wanted to clarify on the

20   logistics.  You indicated February would be --

21           THE COURT:  No, I just -- I was just kind of --

22   that's what I was thinking last night.  I am going to just

23   order it, and direct you to confer, figure it out in a week,

24   let's say, and if we can't -- I think what I finally wrote

25   yesterday is, if you can't figure it out, I'm attaching my

1 standing order, confer, send your respective proposals, and

2 I'll decide for you.  (Indiscernible) should go your way, if

3 you can't agree -- if you can't agree.

4          MR. MICHEL:  Okay.  Thank you, your Honor.

5          MR. SMYTH:  And it would be in person.  Is that

6 right, your Honor?

7          THE COURT:  Yes.  I'm going to order that, unless

8 you agree to something else.  And so that -- I'm going to

9 give you an opportunity to work out where and when, but, if

10 you can't, you'll submit your proposals, "Never," and "This

11 is what we want," and then I'll just order that.

12          MR. SMYTH:  And then, finally, your Honor, just

13 because there was some discussion of, you know, "ad

14 infinitum," that's obviously not the intent here.

15          THE COURT:  No, I know it's not.

16          MR. SMYTH:  I think, as we informed counsel for

17 Mr. Musk early on, you know, we only anticipate about

18 three-quarters of a day with Mr. Musk for this -- this

19 additional testimony.  Obviously, that's going to be

20 dependent on his answers and his cooperation with the

21 process, but we certainly expect to be able to complete this

22 within a day.

23          THE COURT:  Okay.  All right.  Thank you.

24          MR. MICHEL:  Thank you, your Honor.

25          MR. SMYTH:  Thank you, your Honor.

22

1        (Proceedings concluded at 11:02 a.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

23

CERTIFICATE OF TRANSCRIBER

1

2

3    I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9    I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16         Echo Reporting, Inc., Transcriber

17           Tuesday, December 19, 2023

18

19

20

21

22

23

24

25