UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Applicant,<br><br>v.<br><br>ELON MUSK,<br><br>Respondent | Case No. 23-mc-80253-LB<br><br>**ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA**<br><br>Re: ECF No. 1 |

## INTRODUCTION

The SEC has applied for an order to compel compliance with its investigative subpoena for respondent Elon Musk to appear and testify at the SEC's San Francisco office about possible violations of federal securities laws in connection with his 2022 purchase of Twitter and his statements about that purchase.[1] The parties, at least initially, agreed to a date but ultimately the respondent did not appear and resists the subpoena on the grounds that the SEC's investigation is baseless and harassing and seeks irrelevant information. Also, he contends that the subpoena — issued by an SEC staff member appointed by the SEC's Director of Enforcement — exceeds the

---

[1] Appl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 23-mc-80253-LB

SEC's authority because it was not issued by an officer appointed by the President, a court, or the head of a department, as required by the Appointments Clause of the U.S. Constitution.[2]

The court enforces the subpoena: the evidence is relevant and material to the SEC's investigation, and the testimony is not unduly burdensome. As to the argument that the subpoena exceeds the SEC's authority, the Exchange Act authorizes the subpoena, and the staff attorneys who issue subpoenas are not inferior officers subject to the Appointments Clause.

The parties must confer within one week and settle on a date and location for the testimony.

## STATEMENT

The SEC issued a formal order initiating its investigation on April 14, 2022, and it issued a corrected order on July 15, 2023. The orders authorized SEC staff to investigate — including through subpoenas for documents and testimony — whether persons may have violated the federal securities laws in connection with the respondent's purchase of Twitter in 2022 and his 2022 statements and SEC filings relating to Twitter.[3] The SEC served the respondent with a subpoena for his testimony, and he testified by videoconference in two half-day sessions on July 12 and 27, 2022.[4] Since then, the SEC has received "thousands of new documents" from various parties, including hundreds of documents from the respondent. Nearly half of the respondent's production to the SEC occurred after his last half-day session, including documents that he authored.[5] The SEC thus wants to ask the respondent about the new information. In April 2023, SEC staff informed the respondent's counsel that it would subpoena the respondent for in-person testimony in San Francisco. The respondent's counsel provided scheduling conflicts, and ultimately, on May 23, 2023, the respondent's counsel agreed that the respondent would appear for investigative testimony in San Francisco on September 14, 2023. He did not object to either to the testimony or to an in-person appearance. Later that day, the SEC served the respondent with the subpoena

---

[2] Opp'n – ECF No. 24 at 8–9.

[3] Andrews Decl. – ECF No. 2 at 2–3 (¶¶ 2–3, 5).

[4] *Id.* at 3 (¶ 6).

[5] *Id.* (¶ 7).

ORDER – No. 23-mc-80253-LB        2

requiring his attendance for testimony on September 14 at the SEC's San Francisco office.[6] The respondent did not object to the subpoena.[7]

On August 28, 2023, the respondent's counsel asked to move the testimony date from September 14 to September 15, 2023, to accommodate the respondent's travel schedule. The SEC agreed to the accommodation and issued a second subpoena for the respondent's appearance on September 15.[8] On September 13, the respondent's counsel informed the SEC that the respondent would not appear on September 15 for several reasons: (1) it was not clear why the SEC needed to question the respondent further, given the earlier testimony; (2) the in-person testimony in San Francisco suggested bad faith because the respondent lives elsewhere; (3) a six-hundred-page biography was published on September 12, and counsel needed to review it (and expected that the SEC would want to review it too); and (4) these matters needed to be resolved before the respondent provided further testimony.[9] The SEC responded the next day, explained that it needed another day of testimony to review new documents, summarized the parties' discussions and agreements for the respondent to provide testimony in September 2023, cited its statutory authority to compel attendance at any place in the U.S., 15 U.S.C. § 78u(b), and offered two new dates (September 19 and September 20) in San Francisco, citing media reports that the respondent would be in the San Francisco area then.[10] The respondent did not appear on September 15.[11]

Based on its understanding that the respondent lives in Austin, Texas, on September 19, the SEC sent an email to the respondent's counsel offering to conduct the testimony at the SEC's office in Fort Worth, Texas, on various dates in October.[12] On September 21, the SEC sent a follow-up letter offering additional dates in November.[13] On September 24, 2023, the respondent's

---

[6] *Id.* at 3–4 (¶¶ 8–9); Subpoena, Ex. 2 to *id.* – ECF No. 2-2.

[7] Andrews Decl. – ECF No. 2 at 4 (¶ 10).

[8] *Id.* (¶ 11).

[9] *Id.* (¶ 13); Letter, Ex. 4 to *id.* – ECF No. 2-4.

[10] Letter, Ex. 5 to *id.* – ECF No. 2-5.

[11] Andrews Decl. – ECF No. 2 at 4 (¶ 14).

[12] Email, Ex. 6 to *id.* – ECF No. 2-6.

[13] Letter, Ex. 7 to *id.* – ECF No. 2-7.

ORDER – No. 23-mc-80253-LB            3

counsel sent a letter saying that that the respondent would not appear for several reasons: the SEC had leaked information to the mainstream media, the investigation was frivolous (shown in part by the SEC's opening it the day after it closed an earlier investigation), and the litany of document requests and demand for a third testimony — in the face of a multi-year investigation "arising from the accidental tardiness of a clerical filing" — was troubling government action.[14] The SEC responded on September 25, characterizing the objections as baseless and asking the respondent to reconsider his refusal to provide testimony.[15] The respondent did not reply to the letter.[16]

To support his contention of harassment, the respondent points to the SEC's "unrelenting investigation" of the respondent, including its two September 2018 actions against him in the S.D.N.Y. for his statements on Twitter.[17] He characterizes the settlement of those cases as a forced consent decree with First Amendment implications in the form of the requirement for a Tesla lawyer's preapproval of public communications "on a range of subject matters."[18] He identifies the SEC's loss of its contempt motion against the respondent for a tweet and the jury's finding of no liability in a private securities action.[19] Since 2018, the SEC has issued "dozens upon dozens" of burdensome and costly subpoenas to the respondent and to his related entities without bringing formal charges.[20] On November 18, 2019, the SEC closed its investigation into the 2018 tweet but opened a new investigation into SpaceX.[21]

The respondent characterizes the SEC's actions as "dirty tactics:" For example, in connection with the contempt action (discussed in the last paragraph), an SEC staff member leaked

---

[14] Letter, Ex. 8 to *id.* – ECF No. 2-8.

[15] Letter, Ex. 9 to *id.* – ECF No. 2-9.

[16] Andrews Decl. – ECF No. 2 at 5 (¶ 18).

[17] Opp'n – ECF No. 24 at 9 (citing *SEC v. Musk*, 1:18-cv-8865 (S.D.N.Y.), ECF No. 1; *SEC v. Tesla*, 1:18-cv-8947 (S.D.N.Y.)).

[18] *Id.*

[19] *Id.* at 9–10 (citing *SEC v. Musk*, 1:18-cv-8865, ECF Nos. 18, 39, 48, and *In re Tesla Inc. Sec. Litig.*, No. 18-CV-04865-EMC, ECF No. 671 (N.D. Cal. Feb. 3, 2023)).

[20] Spiro Decl. – ECF No. 25 at 3 (¶ 11).

[21] *Id.* at 3 (¶ 12).

ORDER – No. 23-mc-80253-LB 4

information to the press.[22] He also references the SEC's hijacking of an investigation into the respondent's SEC Rule 13d-1 disclosures. 17 C.F.R. § 240.13d. On the same day that the respondent disclosed his acquisition of Twitter stock on Schedule 13G (the form for passive investors who acquire more than five percent of a publicly traded stock), the SEC's Division of Corporation Finance asked about the filing.[23] The next day the respondent filed a Schedule 13D (the form for investors who are not passive investors).[24] Shortly thereafter, the Enforcement Division intervened "so that the same individuals investigating Mr. Musk's compliance with the consent decree could also manage the present investigation."[25] The SEC usually resolves untimely filings with fines.[26] But here, it has issued thirty-two administrative subpoenas in the investigation, including five document subpoenas — including for all of the respondent's emails through August 2022 related to the Twitter merger — and three testimony subpoenas to the respondent.[27] It has taken the respondent's testimony twice for a total of eight hours,[28] the testimony of the respondent's wealth manager three times for a total of twelve hours,[29] and testimony from at least two other individuals.[30]

    The court held a hearing on December 14, 2023.

---

[22] Opp'n – ECF No. 24 at 10 (citing *SEC v. Musk*, 1:18-cv-8865, ECF No. 71); Spiro Decl. – ECF No. 25 at 3 (¶ 13) (SEC has never denied that it was responsible for the leak).

[23] Spiro Decl. – ECF No. 25 at 3 (¶ 14); Schedule 13G, Ex. 1 to *id.* – ECF No. 25-1.

[24] Schedule 13D, Ex. 2 to *id.* – ECF No. 25-2.

[25] Spiro Decl. – ECF No. 25 at 3 (¶ 14).

[26] Opp'n – ECF No. 24 at 11–12 (citing specific cases, including one involving a $100,000 fine for a hedge fund that failed to timely file a Schedule 13D for approximately 45 days after it previously filed a Schedule 13G, and three other cases imposing fines of $100,000, $120,000, and $150,000 for — at least for two cases — longer delays).

[27] Spiro Decl. – ECF No. 25 at 3 (¶ 15).

[28] *Id.* at 3–4 (¶¶ 17–18).

[29] *Id.* (¶¶ 16, 19, 21).

[30] *Id.* at 3 (¶ 15).

ORDER – No. 23-mc-80253-LB                            5

# ANALYSIS

The respondent challenges the SEC subpoena as irrelevant and burdensome, and he also contends that it exceeds the SEC's authority because it was not issued by an officer appointed by the President, a court, or the head of a department.[31] The court grants the SEC's motion to enforce the subpoena: it seeks relevant information, and it is otherwise valid.

### 1. The Subpoena Seeks Relevant Information

The court's inquiry is narrow: the issues are (1) whether Congress has granted the authority to investigate, (2) whether the procedural requirements have been followed, and (3) whether the evidence is relevant and material to the investigation. *SEC v. Obioha*, No. 12-cv-80109-WHA, 2012 WL 4889286, at *1 (N.D. Cal. Oct. 12, 2012) (quoting *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009); *see also United States v. Powell*, 379 U.S. 48, 57–58 (1964) (administrative agency's investigative subpoena (there, an IRS subpoena) must be enforced if its investigation has a legitimate purpose, the information may be relevant to that purpose, the agency does not already possess the information, and all administrative steps have been followed). "An affidavit from a government official is sufficient to establish a sprima facie showing that these requirements have been met." *FDIC v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997).

First, the SEC has broad authority to issue subpoenas. *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 743 (1984) ("The provisions vesting the SEC with power to issue and seek enforcement of subpoenas are expansive.") Its authority includes the power to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b); *see also id.* § 77t(a). The investigation here — about possible violations of the federal securities laws in connection with the respondent's 2022 purchases of Twitter stock and

---

[31] Opp'n – ECF No. 24 at 8–9.

his 2022 statements and SEC filings relating to Twitter — were authorized by the SEC's Formal Orders.[32]

Second, the information that the SEC seeks is relevant to that investigation. "For purposes of subpoena enforcement, relevance of the evidence is established when the information sought is not 'plainly incompetent or irrelevant for any lawful purpose.'" *Obioha*, 2012 WL 4880286, at *1 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 408 (1943)). The respondent is the person who made the securities purchases, statements, and SEC filings, and the SEC may question him on those topics. This is an investigative subpoena. Minimal relevance is required to enforce it.[33]

Third, the SEC does not have the information. It wants to question the respondent about new information it received after his prior testimony.[34]

Fourth, the SEC has satisfied all administrate prerequisites. The SEC can compel the attendance of witnesses that it deems relevant or material to its investigation. 15 U.S.C. §§ 77s(c), 77u(b). It issued subpoenas for the testimony. The respondent did not comply with the subpoenas.[35]

Because the SEC issued its subpoena lawfully, the burden shifts to the respondent to prove that the subpoena was issued in bad faith or for an improper purpose, such as harassment or to pressure that person to settle a collateral dispute, *Powell*, 379 U.S. at 58, or is "overbroad or unduly burdensome," *EEOC v. Children's Hosp. Med. Center*, 719 F.3d 1426, 1428 (9th Cir. 1983). The respondent has not met this burden. He did not object to the subpoenas initially and asked only for an accommodation for his schedule.[36] Only later did he object to the testimony as irrelevant and harassing, in part because he testified twice previously.[37] The SEC's view is that the timing

---

[32] *See supra* Statement.

[33] Appl. – ECF No. 1 at 12–13 (collecting cases on this point).

[34] *See supra* Statement.

[35] *See id.*

[36] *See id.*

[37] *See id.*

ORDER – No. 23-mc-80253-LB                    7

suggests gamesmanship.[38] But in any event, the contemplated testimony is about productions that post-dated his testimony.

The respondent also suggests that the SEC's investigation is overkill, pointing to its hijacking of the investigation into the respondent's SEC Rule 13d-1 disclosures and contrasting its ordinary practice of fines for Rule 13d violations with the extensive investigation here.[39] But the investigation is about more than a late filing: there are eleven Section 13 filings from April to July 2022. Also, the SEC is investigating potential fraud in connection with securities transactions, in violation of § 10(b) of the Exchange Act and Rule 10b-5, including the respondent's public statements about Twitter.[40]

The other investigations are not demonstrably harassment: they are legitimate government investigations. *Cf. SEC v. Musk*, No. 22-1291, 2023 WL 3451402, at *2 (2nd Cir. May 15, 2023) (affirming district court's denial of the respondent's motion to terminate the 2018 SEC consent degree and rejecting claim of harassment).

Finally, whatever time the respondent's counsel needed to review the biography was provided by the SEC's offer of new dates (and generally by the time that has passed), and any challenge to the location of the deposition was addressed by the SEC's offer to host the testimony in Texas.[41]

In sum, the respondent's claims of harassment generally are challenges to the relevancy of the SEC's continued investigation. But the SEC's subpoena is within its authority, definite, and seeks relevant information. The court grants the SEC's application to enforce the subpoena.

**2. The Subpoena Does Not Exceed the SEC's Authority**

The respondent contends that the subpoena — issued by an SEC staff member appointed by the SEC's Director of Enforcement — exceeds the SEC's authority because it was not issued by

---

[38] Reply – ECF No. 28 at 12.

[39] *See supra* Statement.

[40] Second Andrews Decl. – ECF No. 29 at 3–4 (¶¶ 6–9) (referencing the Formal Orders).

[41] *See supra* Statement.

ORDER – No. 23-mc-80253-LB                8

an officer appointed by the President, a court, or the head of a department, as required by the Appointments Clause of the U.S. Constitution.[42] U.S. Const. Art. II, § 2, Cl. 2.

The Exchange Act authorizes the SEC to investigate potential securities violations and allows "any member of the Commission or any officer designated by it" to administer oaths, subpoena witnesses and compel their attendance, take evidence, and require the production of any documents or records that "the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b). The Commission has delegated the authority to "order the making" of investigations to the Director of the Division of Enforcement. 17 C.F.R. § 200.30-4(a)(13); *see also* 15 U.S.C. §§ 78d-1, 78d-2.

The respondent contends that the SEC Enforcement Staff who issue administrative subpoenas in aid of enforcement investigations are inferior officers subject to the Appointments Clause because they are exercising significant government authority that can be performed only by officers appointed pursuant to the Appointments Clause.[43] And because they were not appointed by the President, the Courts of Law, or the Heads of Departments, as required by U.S. Const. Art. II, § 2, Cl. 2, and instead were appointed by the Director of the SEC Division of Enforcement, the subpoenas are improper.[44]

But as the SEC counters, the staff attorneys who sign subpoenas are non-officer employees not subject to the Appointments Clause: they lack the "extensive powers . . . comparable to [] a federal district judge conducting a bench trial."[45] *Lucia v. SEC*, 138 S. Ct. 2044, 2049, 2053–3055 (2018) (cleaned up) (holding that ALJs and special trial judges of the U.S. Tax Court are constitutional officers). Instead, the attorneys are performing investigative functions pursuant to the SEC's formal orders. Moreover, as this case shows, the SEC cannot compel compliance with its subpoenas: it needs a court order. They are not like the ALJs in *Lucia*. *Cf. id.* at 2051 (constitutional officers "exercise significant authority pursuant to the laws of the United States").

---

[42] Opp'n – ECF No. 24 at 8–9, 23–29.

[43] *Id.* at 24–25.

[44] *Id.* at 26–27.

[45] Reply – ECF No. 28 at 14.

Based on this conclusion, the court denies the respondent's request to stay the case pending the Supreme Court's decision in *Jarkesky v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).[46] It is unlikely to affect the outcome here.

## CONCLUSION

The court grants the SEC's application to enforce the subpoena. The parties must confer within one week and settle on a date and location for the testimony. If they cannot agree, then they may submit a joint letter brief with their respective positions, *see* Standing Order (attached) (discovery-dispute procedures), and the court will decide the dispute for them.

This resolves ECF No. 1.

**IT IS SO ORDERED.**

Dated: February 10, 2024

LAUREL BEELER
United States Magistrate Judge

---

[46] Opp'n – ECF No. 24 at 29–30; Reply – ECF No. 28 at 18.

Last revised November 16, 2023

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

**STANDING ORDER FOR MAGISTRATE JUDGE LAUREL BEELER**

Parties must comply with the procedures in the Federal Rules of Civil and Criminal Procedure, the local rules, the general orders, this standing order, and the Northern District's standing order for civil cases titled "Contents of Joint Case Management Statement." The rules are available at http://www.cand.uscourts.gov. The parties' failure to comply with the rules may be a ground for monetary sanctions, dismissal, entry of judgment, or other appropriate sanctions.

## CALENDAR DATES AND SCHEDULING

Motions are heard on Thursdays: civil motions at 9:30 a.m., criminal motions at 10:30 a.m., and pretrial conferences at 1:00 p.m. Hearings are in person unless there is a ground for a videoconference. Parties may stipulate to a hearing by videoconference one week before any hearing. The parties may notice motions (other than discovery motions, discussed below) under the local rules for any available Thursday on the court's calendar (at http://www.cand.uscourts.gov).

Case-management conferences are on Thursdays: criminal cases at 10:30 a.m. in person and civil cases by videoconference at 11:00 a.m. Civil case-management conferences are not recorded unless a party asks or is appearing pro se.

Depending on its schedule, the court may reset or vacate hearings. For scheduling questions,

STANDING ORDER

please contact courtroom deputy Elaine Kabiling at lbcrd@cand.uscourts.gov or 415-522-3140.

**CHAMBERS COPIES**

If filings are voluminous, then the parties must lodge chambers copies that are double-side printed and three-hole punched. They must be the electronically filed copies with the PACER/ECF-generated header (case number, docket number, date, and ECF page number). Exhibits must be tabbed and have a table of contents. If the paper copies are more than two inches thick, then the parties must submit them in a binder.

In addition to paper copies, hyperlinked electronic copies should be submitted if feasible when the supporting documents are lengthy. Any pinpoint citations in the briefs must link to the specific page in the supporting exhibit. PDF briefs and bookmarked exhibits must be emailed to lbpo@cand.uscourts.gov. If the file is too large to email, please lodge a thumb drive or share access to a cloud-based hosting platform that allows court employees to download files.

Otherwise, the parties do not need to submit paper copies and instead can email a chambers PDF copy to lbpo@cand.uscourts.gov. Parties do not need to submit electronic copies of certificates of service, certificates of interested entities or persons, consents or declinations to the court's jurisdiction, stipulations that do not require a court order (*see* Civil Local Rule 6-1), or notices of appearance or substitution of counsel.

**CASE MANAGEMENT**

**1. Less-Experienced Lawyers**

The court encourages parties to give less-experienced lawyers an opportunity to participate in all court proceedings and to let the court know during the scheduling process.

**2. Discovery**

**2.1 Privilege Logs**

If a party withholds material as privileged, *see* Fed. R. Civ. P. 26(b)(5), it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of

privilege is justified. The log must be produced as quickly as possible but no later than fourteen days after the party's disclosures or discovery responses are due unless the parties stipulate to, or the court sets, another date. Privilege logs must contain the following: (a) the title and description of the document, the number of pages, and the Bates-number range, if any; (b) the subject matter or general nature of the communication (without disclosing its contents); (c) the identity and position of its author; (d) the date of the communication; (e) the identity and position of the recipients of the communication; (f) the location where the document was found; (g) the specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and (h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

**2.2 Discovery Disputes**

If parties have a discovery dispute, then counsel must confer by any means to resolve or narrow their dispute. If that process does not resolve the dispute, then lead trial counsel must confer in person if possible or at least by videoconference. Either party may demand a conference with one week's notice. The parties then may raise their dispute in a five-page letter brief (12-point font or greater, reasonable margins, and page breaks between paragraphs). Lead trial counsel for both parties must sign the letter and attest that they met and conferred in person or by videoconference.

The letter must discuss each dispute separately: each section must have one issue and (1) describe the unresolved issue, (2) summarize each party's position (with citations to the facts and legal authority), and (3) provide each party's final proposed compromise. The parties may submit supporting declarations and documentation of up to fifteen pages.

After the parties submit their dispute, then the court will determine the next steps, including issuing a ruling, ordering more briefing, or setting a hearing.

For discovery disputes involving third parties (usually under Federal Rule of Civil Procedure 45), the parties must try to use these procedures and at least must meet and confer (if possible) in person or by videoconference for any dispute. If they cannot agree to these procedures, then the moving party must file a noticed motion under the local rules and include in the notice a statement about its compliance with these procedures.

For emergencies during events such as depositions, the parties may contact the court under Civil Local Rule 37-1(b) by calling courtroom deputy Elaine Kabiling at 415-522-3140 and sending a joint email describing the dispute to lbcrd@cand.uscourts.gov and lbpo@cand.uscourts.gov.

## 3. Amended Pleadings

If a party files an amended pleading, it must file as an attachment a blackline compare of the amended pleading against the last pleading.

## 4. Case-Management Statements

The first joint case-management conference statement in a case must have the information in the Northern District's standing order titled "Contents of Joint Case Management Statement." Subsequent statements need not repeat information in earlier statements and preferably will have only new information.

## 5. Summary-Judgment Motions

The parties may not file separate statements of undisputed facts. *See* Civil Local Rule 56-2. Joint statements of undisputed facts are not required but are helpful. Any joint statement must include — for each undisputed fact — citations to admissible evidence.

**IT IS SO ORDERED.**

Dated: November 16, 2023

LAUREL BEELER
United States Magistrate Judge

STANDING ORDER  4