MONIQUE C. WINKLER (Cal. Bar No. 213031)
BERNARD B. SMYTH (Cal. Bar No. 217741)
SmythB@sec.gov
ROBIN ANDREWS (Ill. Bar No. 6285644)
AndrewsR@sec.gov
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

Attorneys for Applicant
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Applicant,

v.

ELON MUSK,

Respondent.

Case No. 3:23-mc-80253-JSC

**SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO RESPONDENT'S MOTION FOR DE NOVO DETERMINATION**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT MUSK'S TESTIMONY IS RELEVANT TO A LEGITIMATE INVESTIGATIVE PURPOSE ........ 1

A. Musk continues to misrepresent the scope of the SEC's investigation ........ 2

B. Musk continues to misrepresent the relevance of his additional testimony ........ 2

C. Musk's conduct continues to suggest gamesmanship ........ 3

III. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE SEC'S SUBPOENA COMPLIES WITH THE U.S. CONSTITUTION ........ 4

A. SEC staff are not constitutional officers ........ 4

B. Musk's removability challenge would not invalidate the subpoena regardless ........ 10

IV. THE COURT SHOULD AFFIRM JUDGE BEELER'S RULING AND GRANT THE SEC'S APPLICATION ........ 11

# TABLE OF AUTHORITIES

## CASES

*Bistryski v. Allbert*, 848 Fed. App'x 804 (9th Cir. 2021) .................. 11

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................. 5, 6, 7

*Cannon Partners, Ltd. v. Cape Cod Biolab Corp.*, 225 F.R.D. 247 (N.D. Cal. 2003) .................. 11

*CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022) .................. 10

*CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174 (2d Cir. 2023) .................. 11

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) .................. 10

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) .................. 10

*Edmond v. United States*, 520 U.S. 651 (1997) .................. 5

*Ex parte Hennen*, 38 U.S. (13 Pet.) 230 (1839) .................. 10

*Financial Oversight & Management Board for Puerto Rico v. Aurelius Investment LLC*, 140 S. Ct. 1649 (2020) .................. 8, 9

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) .................. 4

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) .................. 5, 6, 7

*In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018) .................. 9

*Lucia v. SEC*, 585 U.S. 237 (2018) .................. *passim*

*Morrison v. Olson*, 487 U.S. 654 (1988) .................. 9

*Myers v. United States,* 272 U.S. 52 (1926) .................. 9 n.4

*Parsons v. United States*, 167 U.S. 324 (1897) .................. 9 n.4

*Ratto Bros. v. Lam*, No. 20-cv-04178-PJH, 2021 U.S. Dist. LEXIS 235262 (N.D. Cal. Dec. 8, 2021) .................. 12

*SEC v. Jarkesy* (S. Ct. No. 22-859) .................. 11 n.5

*Seila Law LLC v. CFPB*, 140 S. Ct. 2193 (2020) .................... 8, 11

*Signature Networks, Inc. v. Estefan*, No. C 03-4796 SBA, 2005 U.S. Dist. LEXIS 49124 (N.D. Cal. May 25, 2005) .................... 12

*United States v. Allred*, 155 U.S. 591 (1895).................... 10

*United States v. Donziger*, 38 F. 4th 290 (2d Cir. 2022) .................... 9

*United States v. Germaine*, 99 U.S. 508 (1879).................... 5

*United States v. Hartwell*, 73 U.S. (6 Wall.) 385 (1868).................... 10

*United States v. Moore*, 95 U.S. 760 (1877).................... 10

*United States v. Perkins*, 116 U.S. 483 (1886) .................... 10

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) .................... 9

**REGULATIONS**

17 C.F.R § § 200.30-4.................... 8

17 C.F.R § § 200.30-4(a)(13).................... 4

**RULES**

Fed R. Civ. P. 72(b) .................... 11

Civil Local Rule 72-3.................... 11

Civil Local Rule 72-3(b) .................... 11

**STATUTES**

15 U.S.C. § 78d-1 .................... 4

15 U.S.C. § 78d-2 .................... 4

15 U.S.C. § 78u(b) .................... 4

15 U.S.C. § 78u(c) .................... 6

15 U.S.C. § 78u(d)(1) .................... 8

15 U.S.C. § 78u(d)(3) .................... 8

**OTHER AUTHORITIES**

U.S. Const. Art. II, § 2, Cl. 1 .......... 5

U.S. Const. Art. II, § 2, Cl. 2 .......... 5

Office of Management and Budget, Analytical Perspectives, Budget of the U.S. Government, Fiscal Year 2022, p. 44, Table 5-2 (2021) .......... 6 n.2

SEC Division of Enforcement, Enforcement Manual (2017)

§ 2.5.1 .......... 8
§ 2.5.2 .......... 8
§ 3.2.8 .......... 6

## I. INTRODUCTION

After considering the evidence and arguments set forth by the parties, Judge Beeler properly found that: (1) the information sought from Musk is relevant and material to the SEC's investigation and does not constitute harassment; and (2) the SEC Enforcement Staff are non-officer employees not subject to the Appointments Clause, and therefore the May 2023 subpoena issued to Musk was enforceable. Dkt. No. 42 at 7; *see* Report and Recommendation ("R&R") (Dkt No. 40-1) at 6-9.

In his latest filing, Musk continues to misrepresent the authorized scope of the SEC's investigation, as well as the relevance of the SEC's yet to be asked questions. Musk also persists with baseless constitutional objections to administrative subpoenas signed by SEC staff. But he still identifies no authority establishing that the routine investigative powers of frontline SEC enforcement staff rise to the level of "exercising significant authority pursuant to the laws of the United States," as required to be considered a constitutional officer, rather than a mere employee, of the federal government.

It is not unusual for an investigating agency to take two days of testimony from the subject of an investigation: one near the beginning of the inquiry, and another near the end. Here, the SEC conducted two half-day sessions of Musk's testimony—each covering separate timeframes and topics—three months into the investigation. Then, barely one year after the investigation began, the SEC attempted to schedule Musk's final session of testimony. Since that outreach in April 2023, Musk has done everything he can to delay the completion of this matter. Musk now complains that this investigation has been pending for too long, but it was Musk's delay tactics that have turned one year into almost two.

## II. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT MUSK'S TESTIMONY IS RELEVANT TO A LEGITIMATE INVESTIGATIVE PURPOSE

After considering the arguments and evidence, Judge Beeler properly found, among other things, that the subpoena to Musk was lawfully issued for a legitimate investigative purpose and that Musk failed to demonstrate any harassment. *See* R&R at 6-8. Judge Beeler also correctly

concluded that "the information that the SEC seeks is relevant" to its investigation, and that "the SEC does not have the information." *Id.* at 7.

**A. Musk continues to misrepresent the scope of the SEC's investigation**

Musk continues to distort the true scope of this investigation – his only hope for establishing that the SEC is not seeking relevant evidence. *See, e.g.,* Dkt. No. 42 at 1 ("a nearly two-years-long investigation prompted by nothing more than allegedly days-late filings"); *id.* at 11 ([a] "meandering, unbounded investigation into an allegedly days-late SEC filing"). As the SEC has thoroughly explained, this is false, and the SEC staff has repeatedly informed Musk that it is false. Reply (Dkt No. 28) at 3-5. This investigation ***also*** examines potential securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder related to, among other things, Musk's public statements about his acquisition of Twitter. *Id.* As with any investigation involving potential Section 10(b) violations, the details of what Musk knew and when, and his intent and meaning behind the public statements, are all critical facts to be gathered. And Musk is the most important witness to ask about these matters.

**B. Musk continues to misrepresent the relevance of his additional testimony**

Musk claims that the SEC "seeks a third round of testimony on ***issues that Mr. Musk . . . has already covered twice before***." As even Mr. Spiro's own declaration makes clear, however, the two half days of testimony covered distinct timeframes and conduct, with little to no overlap. *See* Dkt. No. 42 at 5-6 (citing Spiro Decl. ¶¶ 17-18). Musk also claims that "there is no further relevant information to uncover in a third testimony" and that "the [SEC] Staff was aware of [Musk's] tweets before Mr. Musk's prior two testimonies, and, as the SEC concedes, has already asked about them." *Id.* at 10. But even if certain of Musk's tweets were "asked about" in a prior testimony, this does not preclude the SEC from asking ***new*** questions about what was in Musk's head when he sent those tweets based on ***new*** information the SEC learned after July 2022. Moreover, it is fair for the SEC to ask about other topics – including other public statements – that it was unable to cover in the allotted time during the prior half-day sessions; the SEC was under no obligation to exhaust all conceivable questions on all possible topics.

Finally, Musk's current filing fails to address the fact that, three days before he was to appear for the testimony he failed to attend, his September 2023 biography was published. This book provides important new information relevant to the SEC's investigation. In his most recent filing, Musk is conspicuously silent about the biography, despite his prior claim that its release was a reason he did not appear for his scheduled testimony because the book included "newly released evidence." Musk Opposition (Dkt No. 24) at 14 n.3. The release of the book made Musk's testimony even more important, because Musk's wealth advisor was unable to provide answers about a key communication with Musk described in the book, and neither Musk nor his wealth advisor preserved a copy of the communication itself. Reply at 6-7; Dkt No. 29 at ¶ 13.

**C. Musk's conduct continues to suggest gamesmanship**

Musk claims that "[t]he SEC misstates the facts to make it appear that Mr. Musk agreed to sit for a third testimony." Dkt. No. 42 at 13. The undisputed chronology demonstrates that Musk's counsel agreed to a date for testimony in San Francisco and accepted service of a subpoena with those details, but then Musk waited to notify the SEC staff of his objections – and his intent to not ***comply*** with that subpoena – until nearly four months later (two days before his testimony). Reply at 8. Then, Musk indicated that he might reschedule his testimony if it were conducted in Texas; but when the SEC offered to do so, he simply refused to appear altogether.[1] *See* Dkt. No. 2-6 (9/19/2023 Andrews email to Spiro); Dkt. No. 2-7 (9/21/2023 Andrews letter to Spiro). Now Musk proposes additional briefing (a reply that the rules do not allow) and a second oral argument nearly ***two months from now***. It is now almost a year since the SEC first started negotiating the date for Musk's testimony; his actions since then indicate gamesmanship and delay tactics.

[1] Musk complains that the SEC's Fort Worth office was still too far for him to conveniently attend. Dkt. No. 42 at 7. That Musk did not, however, propose a location for the testimony more convenient to him is further evidence of intent to delay, not good faith negotiation over location.

## III. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE SEC'S SUBPOENA COMPLIES WITH THE U.S. CONSTITUTION

Judge Beeler correctly rejected Musk's argument (at 14) that the May 2023 testimony subpoena is invalid because "the SEC Staff member who issued [it]—like the other Staff purportedly appointed by the Formal Order—was neither appointed in conformance with the Appointments Clause nor removable by the President through the mechanisms required by Article II." As Judge Beeler concluded, "the staff attorneys who sign subpoenas are non-officer employees not subject to the Appointments Clause" because they "are performing investigative functions pursuant to the SEC's formal orders" rather than "'exercis[ing] significant authority pursuant to the laws of the United States'" akin to "the 'extensive powers'" of "'a federal district judge conducting a bench trial.'" R&R at 9 (quoting *Lucia v. SEC*, 585 U.S. 237, 242, 245 (2018)). Because frontline SEC enforcement staff are non-officer employees, Musk's appointment and removability challenges to the validity of the subpoena fail. Moreover, his removability challenge would not invalidate the subpoena regardless because he identifies no injury from the allegedly unconstitutional removal provisions.

### A. SEC staff are not constitutional officers

The Exchange Act authorizes the Commission to investigate potential securities law violations and provides that "any member of the Commission or any officer designated by it" may "administer oaths and affirmations, subp[o]ena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b). The Commission has delegated authority to "order the making of" such investigations to the Director of the Division of Enforcement. 17 C.F.R. § 200.30-4(a)(13); *see also* 15 U.S.C. § 78d-1, 78d-2. The Director was appointed by, and serves at the pleasure of, the Commission in its capacity as head of a department, *see Free Enter. Fund v. PCAOB*, 561 U.S. 477, 510-13 (2010). In the Formal Order in this case, the Director of Enforcement authorized certain staff members to carry out the investigation, and one of those staff members issued the subpoena underlying this

action. SEC enforcement staff can thus "'administer oaths and affirmations, subpoena witness, compel their attendance, take evidence, and require the production of … records,'" Mot. 16, only if they are, as here, authorized to do so in a formal order directing a particular investigation, and only for purposes of that investigation under the supervision of the duly appointed Director of Enforcement.

Musk contends that the testimony subpoena at issue is invalid because the staff member who issued the subpoena was not appointed by the Commission (or the President, with advice and consent of the Senate), as he claims is required by the Appointments Clause, U.S. Const. Art. II, § 2, Cl. 2. But the Appointments Clause governs the appointment only of "'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia*, at 585 U.S. at 241 (quoting U.S. Const. Art. II, § 2, Cl. 2). Principal officers—a category that includes "ambassadors, ministers, heads of departments, and judges," *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991)—must be appointed by the President, by and with the advice and consent of the Senate. U.S. Const. Art. II, § 2, Cls. 1, 2. "[I]nferior Officers"—those "whose work is directed and supervised at some level by" principal officers, *Edmond v. United States*, 520 U.S. 651, 663 (1997)—may be appointed either by the President, with the advice and consent of the Senate, or, if Congress has so provided, by "the President alone," the "Courts of Law," or the "Head[s] of [a] Department." U.S. Const. Art. II, § 2, Cl. 2. By contrast, the "broad swath of 'lesser functionaries' in the Government's workforce" are "non-officer employees," about whom "the Appointments Clause cares not a whit." *Lucia*, 585 U.S. at 245; *see Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) ("Employees are lesser functionaries subordinate to officers of the United States."). The Supreme Court repeatedly has stated that most members of the federal workforce fall within that "broad swath of 'lesser functionaries.'" *See Free Enter. Fund*, 561 U.S. at 506 n.9 (estimating that the percentage of federal employees and agents who are not officers "dramatically" exceeds 90%); *United States v. Germaine*, 99 U.S. 508, 509 (1879) ("nine-tenths of the persons rendering service to the government undoubtedly" are not

constitutional officers).[2] Judge Beeler correctly concluded that the SEC staff attorney who signed the testimony subpoena is one such "non-officer employee." R&R at 9.

The Supreme Court's "framework for distinguishing between officers and employees" focuses on "the extent of power an individual wields in carrying out his assigned functions." *Lucia*, 585 U.S. at 245. A constitutional officer "'exercis[es] significant authority pursuant to the laws of the United States.'" *Id.* (quoting *Buckley*, 424 U.S. at 126). None of the Supreme Court's decisions applying that test support finding that SEC enforcement staff are constitutional officers. As Judge Beeler concluded, the staff attorney who issued the testimony subpoena "lacks the 'extensive powers . . . comparable to [ ] a federal district judge conducting a bench trial,'" R&R at 9 (quoting *Lucia*, 585 U.S. at 242), which underpinned the Supreme Court's conclusions that SEC administrative law judges (ALJs) and United States Tax Court special trial judges (STJs) are constitutional officers. *Lucia*, 585 U.S. at 247-51 (ALJs); *Freytag*, 501 U.S. at 881-82 (STJs). Among other things, SEC enforcement staff cannot "conduct trials"; "rule on the admissibility of evidence"; or "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Lucia*, 585 U.S. at 248-49 (internal quotations omitted).

Musk asserts (at 16) that SEC enforcement staff can, like ALJs, "issue subpoenas, administer oaths," and "examine witnesses." (Citing *Lucia*, 585 U.S. at 241-42, 244-49). But those functions—routinely exercised by thousands of government attorneys—are a fraction of the many powers that ALJs exercise, and neither *Lucia* nor *Freytag* suggests that they would on their own constitute "significant authority pursuant to the laws of the United States." Moreover, as Judge Beeler concluded, SEC staff "cannot compel compliance with its subpoenas," but need a federal court to order and enforce compliance. R&R at 9; *see* 15 U.S.C. § 78u(c); SEC Division of Enforcement, Enforcement Manual § 3.2.8 (2017) (SEC subpoenas are "not self-enforcing. Absent a court order, we cannot compel a witness or custodian to comply with any subpoena.").[3]

---

[2] *See also* Office of Management and Budget, Analytical Perspectives, Budget of the U.S. Government, Fiscal Year 2022, p. 44, Table 5-2 (2021) (estimating that there are more than 4.3 million federal employees, including more than 2.8 million executive branch civilian employees).

[3] Available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf.

Musk contends (at 18) that "[t]he self-enforcing nature of the subpoenas … cannot be the proper test" because a subpoena issued by the Commission—whose members indisputably are constitutional officers—is not self-enforcing. But the Commission's authority to issue subpoenas is not what makes Commissioners constitutional officers—their authority is far more extensive than that. And in determining that ALJs "'exercis[e] significant authority pursuant to the laws of the United States,'" *Lucia*, 585 U.S. at 245, the Supreme Court emphasized that ALJs not only can issue subpoenas, but also "'have the power to enforce compliance with discovery orders'" by "punish[ing] all '[c]ontemptuous conduct,' including violations of those orders, by means as severe as excluding the offender from the hearing," *id*. at 248 (quoting *Freytag*, 501 U.S. at 882)); *see id*. at 250 (recognizing that "if the offender is an attorney, the ALJ can 'summarily suspend' him from representing his client" and that "a judge who will, in the end, issue an opinion complete with factual findings, legal conclusions, and sanctions" also "has substantial informal power to ensure the parties stay in line"). SEC enforcement staff have no such authority.

SEC enforcement staff instead perform functions that "are essentially of an investigative and informative nature" and "there can be no question" that non-officer employees "may exercise" those functions. *Buckley*, 424 U.S. at 137 (1976) (holding that Federal Election Commission members could exercise such functions without being appointed in accordance with the Appointments Clause) (collecting authority). Musk is correct (at 19) that the investigative and informative powers at issue in *Buckley* were in "the same general category as those powers which Congress might delegate to one of its own committees." *Id*. But contrary to Musk's contention (at 19), *Buckley* does not suggest that the tools SEC enforcement staff "may deploy in support of *enforcement* investigations—not merely to inform lawmaking deliberations—requires appointment consistent with Appointments Clause." *Buckley* says that the Federal Election Commission's "enforcement power, exemplified by its discretionary power to seek judicial relief" by filing a lawsuit to remedy a breach of the law is a "substantial power[ ]" that must be exercised by a constitutional officer. *Id*. at 138. And under the Exchange Act and Commission rules, only the

Commission, not its staff, exercises that power. *See* 15 U.S.C. §§ 78u(d)(l), (d)(3) (authorizing the Commission, not staff, to bring civil actions); 17 C.F.R. § 200.30-4 (codifying Commission delegation of various authorities, but not the authority to institute civil actions); Enforcement Manual §§ 2.5.1-2 (Commission staff recommends enforcement actions, and the Commission determines whether to bring actions).

Musk cites no authority holding that employees like SEC staff who perform investigative functions in aid of the Commission's enforcement power "'exercis[e] significant authority pursuant to the laws of the United States.'" *Lucia*, 585 U.S. at 245. Musk incorrectly claims that the Supreme Court "found investigative authority like that exercised by SEC Enforcement Staff to be indicative of officer status" in *Seila Law LLC v. CFPB*, 140 S. Ct. 2193 (2020), and *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Investment LLC*, 140 S. Ct. 1649 (2020). Neither decision addresses the boundary between constitutional officers and non-officer employees. In *Seila Law*, the Court stated that the enforcement powers ***of the CFPB itself*** are "potent" because they include not only "the authority to conduct investigations" and "issue subpoenas and civil investigative demands," but also the authority to "initiate administrative adjudications, and prosecute civil actions in federal court." *Id*. at 2193. There accordingly was no dispute that the CFPB Director is a principal officer. *Id*. at 2200. In deciding whether that principal officer's "insulation from removal" was constitutional, *id*. at 2201, the Court had no occasion to address what investigative duties ***frontline CFPB staff*** could lawfully perform under the direction and supervision of constitutional officers without being constitutional officers themselves.

Similarly, in *Aurelius Investment*, the question was not whether the members of the Financial Oversight and Management Board of Puerto Rico were non-officer employees, but whether they were "Officers ***of the United States***" or instead exercised "primarily local powers and duties." 140 S. Ct. at 1661 (emphasis added). In determining that the Board's "considerable power"—which included not only investigatory authority, but also oversight of "the development of Puerto Rico's fiscal and budgetary plans" and "the power to initiate bankruptcy proceedings"—was primarily local, *id*. at 1662-63, the Court again had no

occasion to address what investigative duties the Board's subordinate staff could lawfully perform without being constitutional officers.

Musk asserts (at 16) that "investigative and prosecutorial powers represent a paradigmatic exercise of 'the sovereign power of the United States.'" (Quoting *United States v. Providence Journal Co.*, 485 U.S. 693, 700 (1988)). But *Providence Journal* applies that label only to prosecutions. *Id*. The SEC does not bring criminal charges, and its civil enforcement authority is wielded by the Commission itself, which authorizes the bringing of such suits. Even so, none of the prosecutor cases Musk cites (at 16-17) establishes that the performance of every function in aid of that sovereign power—such as issuing subpoenas and examining witnesses—constitutes the "'exercis[e] of significant authority pursuant to the laws of the United States.'" *Lucia*, 585 U.S. at 245. None even grapples with that issue because in each, whether the relevant prosecutor "meet[s] the 'significant authority' requirement" was "undisputed." *United States v. Donziger*, 38 F. 4th 290, 296 (2d Cir. 2022). Those cases thus were limited to whether "special prosecutors … hold a 'continuing position,'" *id*. at 296; and whether the prosecutors were subject to sufficient supervision to qualify as inferior rather than principal officers, *Morrison v. Olson*, 487 U.S. 654, 670-71 & n.12 (1988); *Donziger*, 38 F. 4th at 299-302; *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 626-27 (D.D.C. 2018).[4]

Musk claims (at 17) that in a handful of 19th century cases, the Supreme Court found that federal workers with duties comparable to (or less important than) those of SEC enforcement staff were officers. But again, none of those early decisions addresses whether the individual "'exercis[ed] … significant authority pursuant to the laws of the United States,'" *Lucia*, 585 U.S. at 245, such that the Constitution ***required*** that the position be held by an officer appointed pursuant to the Appointments Clause. Instead, those cases considered whether Congress intended to treat a position it created by statute as an office, *United States*

[4] *Myers v. United States*, cited at Mot. 19, says only that "Parsons' case … conclusively establishes for this Court that the legislative decision of 1789 applied to a United States attorney, an inferior officer." 272 U.S. 52, 159 (1926). It was undisputed in *Parsons v. United States*, 167 U.S. 324 (1897), that a U.S. Attorney is a constitutional officer. The question was whether the President could remove the U.S. Attorney. *Id*. at 327.

*v. Hartwell*, 73 U.S. (6 Wall.) 385, 391-92 (1868); whether (and when) a person lawfully held a claimed office because he was properly appointed to it, *United States v. Perkins*, 116 U.S. 483, 484 (1886); *United States v. Moore*, 95 U.S. 760, 762 (1877); *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 256-58 (1839); and whether a person was entitled to fees for the performance of certain duties of his office, *United States v. Allred*, 155 U.S. 591, 593-96 (1895).

**B. Musk's removability challenge would not invalidate the subpoena regardless**

Although Musk asserts (at 20) that the subpoena is "independently" defective because SEC enforcement staff are "improperly protected from presidential removal," he does not dispute that Judge Beeler did not need to address removal if she was correct that SEC enforcement staff are not constitutional officers. *See* Mot. 23 n.9. Because SEC staff are not constitutional officers for purposes of the Appointments Clause, Musk's removability challenge likewise fails.

In any event, the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), which addressed the removability of the head of the Federal Housing Finance Agency, demonstrates that Musk would not be entitled to relief even if his removal argument had merit. *Collins* held that unconstitutional removal restrictions do not "strip [an officer] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23. Whatever "the President's authority to remove the confirmed" officer, the Court reasoned, absent a "constitutional defect in the statutorily prescribed method of appointment to that office," "there is no reason to regard any of the actions taken by the [agency] ... as void." *Id.* at 1787; *see also CFPB v. CashCall, Inc.*, 35 F.4th 734, 742-43 (9th Cir. 2022) (holding that an enforcement action was validly brought "despite the unconstitutional limitation" on the Director's removal because the "party challenging an agency's past actions" failed to "show how the unconstitutional removal provision *actually harmed* the party"). Musk does not claim that the President had any "awareness at all" of the subpoena, let alone a desire to remove an SEC employee, and he therefore cannot obtain relief. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *cert. granted on other grounds*, 143 S. Ct. 978 (2023) (citing *Collins*, 141 S. Ct.

at 1789). *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 181 (2d Cir. 2023) (rejecting removability challenge involving civil investigative demand under *Collins*).

Musk incorrectly asserts (at 23) that "*Collins*' remedial test does not control" because he "seeks only prospective relief." Musk seeks the same relief as the petitioners in *Collins*—voiding the result of an official's act (the subpoena) on the ground that the official was unconstitutionally insulated from removal. Refusing to enforce that subpoena would thus be retrospective, not prospective, relief—and thus prohibited even under Musk's reading of *Collins*.

Musk's reliance (at 23) on *Seila Law* is even more misplaced. *Collins* criticized Musk's interpretation of *Seila Law* as "read[ing] far too much" into the decision. 141 S. Ct. at 1788. Indeed, far from holding that acting under an unconstitutional removal restriction, without more, invalidates an official's acts, *Collins* cited *Seila Law* for the proposition that unconstitutional removal restrictions do ***not*** strip officers of "the authority to carry out the functions of the office." *Id*. at 1788 & n.23. Absent a nexus between the official's tenure protection and the challenged action, the *Collins* Court reiterated, there was "no reason to hold that the [challenged act] must be completely undone." *Id.* at 1788.[5]

## IV. THE COURT SHOULD AFFIRM JUDGE BEELER'S RULING AND GRANT THE SEC'S APPLICATION

This matter is now fully briefed, and the record is complete. Neither Fed. R. Civ. P. 72(b) nor Civ L. R. 72-3 authorizes a reply brief in this matter. *Cannon Partners, Ltd. v. Cape Cod Biolab Corp.*, 225 F.R.D. 247, 250 (N.D. Cal. 2003); *Bistryski v. Allbert*, 848 F. App'x 804, 805 (9th Cir. 2021). Musk filed no motions under Civ L. R. 72-3(b) to augment the record or for an evidentiary hearing – no record exists other than the proceedings before Judge Beeler.

A second oral argument in this matter is unnecessary and redundant. This Court can properly rely on the record before Judge Beeler, including the December 14, 2023 hearing, during which Musk's counsel argued at length. *See Signature Networks, Inc. v. Estefan*, No. C

[5] For the same reasons, Judge Beeler correctly denied Musk's application to stay the case pending the Supreme Court's decision in *SEC v. Jarkesy* (S. Ct. No. 22-859, argued Nov. 29), because that decision "is unlikely to affect the outcome here." R&R at 10.

03-4796 SBA, 2005 U.S. Dist. LEXIS 49124, at *6 (N.D. Cal. May 25, 2005) ("the Court's review and determination of objections filed pursuant to Civil Local Rule 72-3(a) shall be upon the record of the proceedings before the Magistrate, except when the Court grants a motion for expansion or addition to the record or for an evidentiary hearing."). *See also Ratto Bros. v. Lam*, No. 20-cv-04178-PJH, 2021 U.S. Dist. LEXIS 235262, at *1 (N.D. Cal. Dec. 8, 2021) ("The motion is now ripe for consideration and the court finds the matter suitable for disposition without oral argument."). Musk's proposed hearing date is nearly two months from now; he has provided no justification for this further delay.

For the reasons set forth here, in the SEC's prior pleadings, and at the December 2023 hearing, the SEC respectfully requests that the Court affirm Judge Beeler's ruling and issue an order compelling Elon Musk to comply with the subpoena requiring his testimony.

Dated: March 13, 2024

Respectfully submitted,

*<u>/s/ Robin Andrews</u>*
ROBIN ANDREWS
Attorney for Applicant
SECURITIES AND EXCHANGE COMMISSION