# Exhibit A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com

Christopher G. Michel (*pro hac vice*)
Rachel G. Frank (California Bar No. 330040)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
christophermichel@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Attorneys for Respondent Elon Musk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Applicant,<br><br>     v.<br><br>ELON MUSK,<br><br>          Respondent. | Case No. 3:23-mc-80253-JSC<br><br>**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Date:   May 9, 2024<br>Time:   10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .................................................................................................................................2

I.      ENFORCEMENT OF THE SUBPOENA IS UNREASONABLE......................................2

II.     ENFORCEMENT OF THE SUBPOENA WOULD VIOLATE THE
CONSTITUTION..............................................................................................................3

      A.      Enforcing The Subpoena Would Violate The Appointments Clause ........................4

      B.      Enforcing The Subpoena Would Also Violate Removal Power Principles ...............9

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckley v. Valeo*,
  424 U.S. 1 (1976) (per curiam) .................................................................................... 4, 8

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ....................................................................................................... 9

*Dignity Health v. Dep't of Indus. Rels., Div. of Lab. Standards Enf't*,
  445 F. Supp. 3d 491 (N.D. Cal. 2020) ............................................................................... 9

*Edmond v. United States*,
  520 U.S. 661 (1997) ............................................................................................................ 8

*Fin. Oversight & Mgmt. Bd. for P. R. v. Aurelius Inv., LLC*,
  140 S. Ct. 1649 (2020) ....................................................................................................... 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ........................................................................................................... 3

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) ................................. 9

*Lucia v. SEC*,
  585 U.S. 237 (2018) ............................................................................................... 4, 5, 7, 8

*Lucia v. SEC*,
  832 F.3d 277 (D.C. Cir. 2016) ........................................................................................... 7

*SEC v. Brigadoon Scotch Distrib. Co.*,
  480 F.2d 1047 (2d Cir. 1973) ............................................................................................. 3

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  140 S. Ct. 2183 (2020) .............................................................................................. 7, 9, 10

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) ............................................................................................................ 3, 8

*United States v. Germaine*,
  99 U.S. 508 (1878) ............................................................................................................. 5

**Constitutional Provisions and Statutes**

U.S. Const. art. II, § 2, cl. 2 .................................................................................................... 4

15 U.S.C. § 78u(b) .................................................................................................................. 5

**Other Authorities**

Securities Exchange Act Release No. 74 FR 40068 (Aug. 11, 2009) No. 60448 ........................... 6

Securities Exchange Act Release No. 75 FR 49820 (Aug. 16, 2010) No. 62690 ........................... 6

Respondent Elon Musk respectfully submits this Reply in support of his Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge.  *See* Dkt. No. 42 (Mot.).

**PRELIMINARY STATEMENT**

The Securities and Exchange Commission ("SEC" or "Commission") insists that it is entitled to a third round of testimony from Mr. Musk in this investigation.  *See* Dkt. 43 (Opp.) at 1.  But the Commission admits that it seeks primarily to ask "*new* questions" on topics it has already covered.  Opp. 2.  And it suggests no limit on its ability to continuing asking about those topics.  The SEC thus requests a blank check to compel Mr. Musk—one of the busiest people in the world, with significant responsibilities to shareholders and employees—to testify over and over and over until the Enforcement Staff cannot think of any more questions.  That is not the law.  The SEC does not cite a single case in which a court has allowed an agency to obtain a third bite at the apple of the kind the agency seeks here.  Courts play a vital role in safeguarding individual liberty by declining to enforce unreasonably burdensome administrative subpoenas.  The Court should do so here.

Separately, the SEC's request should be denied because the subpoena was issued through procedures that defy core constitutional protections.  The SEC concedes that the Enforcement Staff who issued the subpoena were not appointed by the President or the Commission, as would be required if the Staff exercise "significant authority pursuant to the laws of the United States."  Opp. 6.  The SEC's counterintuitive position is that Enforcement Staff who can purportedly "compel the[] attendance" of witnesses, "take evidence" from them, and "require the production of … [their] records" are *not* exercising significant authority pursuant to federal law.  Opp. 4.  The Commission maintains that claim even though both the statute it invokes to justify the investigation and the Formal Order it drafted to create the investigation describe Enforcement Staff as "officers."  Opp. 4–5.  And the SEC contends that Enforcement Staff need not be appointed consistent with the Appointments Clause even though the Commission did just that until 2009. Mot. at 17, 20 n.7.  The SEC's refusal to assume accountability for this runaway investigation implicates precisely the

concerns that underlie the Appointments Clause—and the subpoena should not be enforced until the SEC complies.

The Enforcement Staff's obsessive pursuit of Mr. Musk is enabled by another constitutional infirmity. Because the Enforcement Staff are insulated from presidential supervision by at least two layers of for-cause removal protection, they are free of the oversight the Constitution demands. The SEC barely denies this constitutional violation; it contends principally that Mr. Musk must endure the consequences because the Court cannot provide him with retrospective relief. But Mr. Musk is not seeking retrospective relief; he is opposing the *SEC's request for relief*, which the Commission sought in the motion now pending before this Court. The Enforcement Staff cannot evade a lack of supervision by the President by evading the oversight of the judiciary.

For any or all of those reasons, this Court should reject the R&R and deny the Commission's application to enforce the administrative subpoena.[1]

**ARGUMENT**

**I.    ENFORCEMENT OF THE SUBPOENA IS UNREASONABLE**

The SEC does not dispute that this Court should decline to enforce an administrative subpoena that is unreasonable or imposes an undue burden. *See* Mot. 8–9 (collecting authority). Nor does the SEC contest that it seeks to compel Mr. Musk's testimony for the *third* time in this nearly-two-year investigation. *See id.*; *see also* Opp. 2. The SEC asserts that Mr. Musk "is the most important witness" in the case. Opp. 2. But that is why the Enforcement Staff have already taken

---

[1]    The SEC urges the Court to decide this matter without a hearing. Opp. 11–12. That request is unpersuasive given the significant issues presented, and it is especially misguided because the matter should have been heard initially by this Court rather than the magistrate judge. Dkt. No. 40. The SEC also baselessly alleges Mr. Musk seeks a hearing for purposes of delay. Opp. 12. In fact, the time between the filing of Mr. Musk's objections and the current hearing date is *less* than the time between the SEC's filing of its application and the hearing before the magistrate judge. In any event, counsel for Mr. Musk are prepared to appear for a hearing on any date convenient for the Court.

his testimony twice. The SEC fails to identify any case in which a court has approved a *third* testimony subpoena to the same person in a single investigation. This case should not be the first.

Compelling a third round of testimony from Mr. Musk would be especially unwarranted because the SEC does not identify any topics for this session that it could not have covered in the prior rounds of testimony. To the contrary, the SEC admits that it plans to ask Mr. Musk about issues that it has already "'asked about' in a prior testimony" or could have asked about in those sessions. Opp. 2. The SEC claims that it should be able to do so because it has purportedly learned (unspecified) new information, including by reading a book about Mr. Musk. Opp. 2–3. But that chilling line of argument has no stopping point. If the SEC is free to summon Mr. Musk for another round of testimony every time it learns something supposedly new or reads coverage of him in the press, it will have unlimited power to harass and distract him from his work on behalf of shareholders, employees, and customers—not to mention the rest of his life.

The SEC lacks such a blank check. Private citizens are not subject to serial demands for questioning whenever an agency staff member is so inclined. The law permits the SEC to ask reasonable questions, but it also requires the SEC to stop at a reasonable point. *See SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973). That point has arrived. *Cf.* 12/14/23 Hr'g Tr. 20:10–12 (Judge Beeler noting that her rule of thumb as a prosecutor was "try to make a call in a year," at which point "everybody's interest is better served by moving on").

## II. ENFORCEMENT OF THE SUBPOENA WOULD VIOLATE THE CONSTITUTION

The SEC's overreach in this investigation reflects a deeper flaw: the Enforcement Staff conducting the investigation are vested with powers that make them officers of the United States, but they were neither selected nor are removable in accordance with the procedures required by the Constitution. Compliance with those procedures is essential to ensuring agency accountability and protecting individual liberty. *See, e.g.*, *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021); *Free*

*Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483, 501 (2010).  The SEC's application to enforce the administrative subpoena should therefore be denied on that basis as well.

### A. Enforcing The Subpoena Would Violate The Appointments Clause

Most of the Appointments Clause issues are undisputed.  Under Article II, "Officers of the United States" must be appointed by (as relevant here) the President or a Head of Department.  U.S. Const. art. II, § 2, cl. 2.  The SEC agrees that the Enforcement Staff conducting this investigation were not appointed by the President or a Head of Department, so their exercise of authority violates the Appointments Clause if they are "Officers of the United States."  *See* Opp. 4–5.  The SEC also agrees that whether the Enforcement Staff are "Officers of the United States" turns on whether they exercise "significant authority pursuant to the laws of the United States."  *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)); *see* Opp. 6.

As detailed in Mr. Musk's motion—and as a matter of common sense—they do.  Under the Formal Order, the Enforcement Staff conducting this investigation are empowered to, among other things, "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of . . . records deemed relevant or material to the inquiry."  Formal Order, Dkt. No. 25-3; Corrected Formal Order, Dkt. No. 25-5.  The Enforcement Staff's deployment of those powers in support of a federal law enforcement investigation—actions roughly equivalent to those of, for example, an Assistant U.S. Attorney—readily constitutes the exercise of significant authority of the United States.  *See* Mot. 16–17.  The SEC's attempts to diminish the role of the Enforcement Staff conducting this investigation, *see* Opp. 4–10, are misplaced; indeed, they only reinforce that federal officials conducting a law enforcement investigation of this kind are officers who must be appointed consistent with the Appointments Clause—as the SEC itself did for Enforcement Staff conducting investigations before 2009.

***The Text of the Exchange Act and the Formal Order.***  The SEC begins its argument (Opp. 4) by quoting the relevant provision of the Exchange Act, which states that "any member of the Commission or *any officer designated by it* is empowered to administer oaths and affirmations, subp[o]ena witnesses, compel their attendance, take evidence, and require the production of any … records which the Commission deems relevant or material to the inquiry."  15 U.S.C. § 78u(b) (emphasis added).  The SEC notes that those statutorily enumerated powers are the same ones the Formal Order vests in the Enforcement Staff conducting this investigation.  *See* Opp. 4–5.  But the SEC does not address the rest of the statutory text.  Congress extended those investigatory powers only to the Commission or "an *officer* designated by it."  15 U.S.C. § 78u(b) (emphasis added).  The Formal Order likewise designates the Enforcement Staff empowered to conduct the investigation as "*officers* of the Commission."  Corrected Formal Order, Dkt. No. 25-5 at 2 (emphasis added).

Although that usage is not dispositive (because the words of the Constitution rather than those of Congress or the agency ultimately control), the fact that Congress and the Commission used the word "officer" is no coincidence.  It reinforces that Enforcement Staff vested with the investigatory powers enumerated in the Exchange Act and the Formal Order are officers of the United States because they exercise significant authority of the United States.  *See United States v. Germaine*, 99 U.S. 508, 510 (1878) (explaining that if Congress had intended to refer to "others than officers as defined by the Constitution, words to that effect would be used"); *see also Lucia*, 585 U.S. at 264 (Breyer, J., concurring in the judgment in part) ("[T]he Court, when deciding whether other positions are 'Officers of the United States' under the Appointments Clause, should give substantial weight to Congress' decision.").

***The SEC's Prior Practice and the Number of Officers.***  There is nothing anomalous about treating Enforcement Staff empowered to conduct law enforcement investigations as officers of the United States.  Such status does not mean that Staff are barred from conducting investigations; it

means only that they must be appointed consistent with the Appointments Clause. As Mr. Musk explained in his motion—and the SEC does not dispute—the SEC *did* appoint Enforcement Staff to conduct investigations consistent with the Appointments Clause until 2009. *See* Mot. 17, 20 n.7. Specifically, Formal Orders appointing Enforcement Staff were issued by the Commission, which qualifies as a Head of Department—rather than the Director of the Enforcement Division, who does not. *Id.*; *see* Securities Exchange Act Release No. 62690, 75 FR 49820 (Aug. 16, 2010); Securities Exchange Act Release No. 60448, 74 FR 40068 (Aug. 11, 2009).

Although the Commission now suggests that treating Enforcement Staff who conduct investigations as officers subject to the Appointments Clause would result in an unduly high number of officers within the agency, *see* Opp. 6–7, that position is undermined by the SEC's own prior practice. Moreover, if the SEC prefers to limit the number of Enforcement Staff who have officer status, it need only limit the number of Enforcement Staff in which it vests significant investigative powers. The Appointments Clause leaves that choice to the SEC; the Clause requires only that the Commission be accountable for the exercise of the significant authority on its behalf.

***Comparison of Enforcement Staff to District Judges and ALJs***. Relying on the R&R, the SEC contends that its Enforcement Staff are not officers of the United States because their powers are not "akin" to those of a federal district judge or ALJ. Opp. 4, 6. As explained in Mr. Musk's motion, however, the fact that Enforcement Staff lack the same powers as judges or ALJs does not preclude them from being officers. Mot. 17–18. Cabinet Secretaries and military commanders lack the same powers as judges or ALJs (so do SEC Commissioners), but they are all undisputedly officers. *See id.*; Opp. 7. The R&R's comparison of Enforcement Staff to district judges and ALJs

thus does not answer the operative question: whether Enforcement Staff exercise "significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245.[2]

***Similarity of Enforcement Staff to Federal Prosecutors and Other Enforcement Officials.*** Rather than comparing Enforcement Staff vested with investigatory powers to officers with judicial and quasi-judicial functions, the closer analogy is to federal prosecutors—*e.g.*, Assistant U.S. Attorneys—and other federal law enforcement officials. The SEC does not dispute that such officials have long been recognized to be officers, nor does it deny that the investigatory powers of such officers are very similar to those of the Enforcement Staff at issue in this case. *See* Mot. 16–17; Opp. 9. And while the SEC previously contended that the Enforcement Staff's investigatory powers were insufficient to make them officers under *Buckley*, the Commission now concedes that *Buckley*'s reference to "investigatory and informative" powers addressed only authority to investigate and inform the content of *legislation*—not to investigate in support of law enforcement actions, as the Enforcement Staff do. Opp. 7; *see* Mot. 19.

The SEC also does not dispute that the Supreme Court's decisions explaining the powers of officers of the United States have repeatedly emphasized the same significant authorities that the Enforcement Staff exercise: *e.g.*, to "administer oaths, issue subpoenas, take evidence and demand data." *Fin. Oversight & Mgmt. Bd. for P. R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1662 (2020); *see Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2193 (2020) ("to conduct investigations, issue subpoenas and civil investigative demands"). The SEC observes that those decisions did not involve disputes over whether the officials in question were officers or employees, and that other decisions holding that prosecutors are officers did not involve officials with precisely

---

[2] To the extent the SEC holds up ALJs as quintessential examples of constitutional officers, it is notable that the SEC itself long argued that ALJs were *not* officers. *See, e.g.*, Brief for Respondent at 24, *Lucia v. SEC*, 832 F.3d 277 (D.C. Cir. 2016) (No. 15-1345), Doc. 1608530.

the same scope of powers as the Enforcement Staff. Opp. 8–9. It is true that the Supreme Court has not issued a decision involving officials with exactly the same powers as the SEC Enforcement Staff; if it had, there would be no need to litigate this case. But given that the Enforcement Staff have authorities that overlap extensively with those of federal prosecutors and other enforcement officials that are undisputedly officers, the far stronger inference from Supreme Court precedent is that Enforcement Staff vested with the authorities at issue here are officers as well.

The Commission's sole remaining response is that its Enforcement Staff lack final decision-making authority. Opp. 9. But the same is true of many other officers. *See, e.g.*, *Arthrex*, 594 U.S. at 23; *Edmond v. United States*, 520 U.S. 661, 665 (1997). And the Supreme Court has squarely rejected the argument that final decision-making authority marks the dividing line between officers and employees. *See, e.g.*, *Lucia*, 585 U.S. at 247 (recognizing officer status "even when [SEC ALJs'] decisions were not final").

***Other Officers of the United States.*** Finally, the SEC concedes that the Supreme Court has held that a range of officials who exercise even more limited powers than the Enforcement Staff are constitutional officers. *See* Opp. 9–10; Mot. 17 (citing cases involving a district court clerk, engineers, assistant surgeons, and bail-takers). The Commission tries to downplay the import of these cases, arguing they fail to apply the correct legal standard. Opp. 9–10. But the Supreme Court relied on those very cases in establishing the "significant authority" standard that the SEC agrees is controlling. *Buckley*, 424 U.S. at 126. As the Court put it, "[i]f a postmaster first class and the clerk of a district court are inferior officers of the United States within the meaning of the Appointments Clause, as they are, surely the Commissioners before us are at the very least such 'inferior Officers' within the meaning of that Clause." *Id.* (citations omitted). So too here.

### B. Enforcing The Subpoena Would Also Violate Removal Power Principles

The Commission's failure to comply with the Appointments Clause is not the only constitutional defect in this case. The insulation of the Enforcement Staff from presidential supervision by at least two layers of for-cause removal protection separately violates the requirements of Article II. *See* Mot. 21–22; *Seila Law*, 140 S. Ct. at 2198; *see also Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

The SEC does not dispute that analysis on the merits, other than to reiterate its (mistaken) contention that Enforcement Staff empowered with the authorities at issue in this case are not officers. Opp. 10. The Commission instead argues that Mr. Musk lacks any remedy for such a constitutional violation. Specifically, the SEC contends that Mr. Musk seeks "retrospective" relief that is available only upon a showing that the Enforcement Staff would not have issued the subpoena if the President's removal authority had been properly recognized. Opp. 10–11 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021)).

The flaw in that analysis is self-evident. Mr. Musk is not seeking "retrospective … relief." Opp. 11. He is not seeking any relief; he is opposing *the SEC's request for relief* in the form of the application that the SEC filed to enforce the administrative subpoena. The SEC asserts that "[r]efusing to enforce th[e] subpoena would … be retrospective," *id.*, but that is also wrong. Whether to enforce the subpoena was not the subject of any earlier proceeding; it is the subject of *this proceeding*. Indeed, the SEC not only concedes that enforcing its subpoena requires action from this Court but (unpersuasively) makes that requirement a pillar of its argument that Enforcement Staff lack officer status. Opp. 6–7. Unlike in *Collins*, therefore, remedying the constitutional defect does not require "voiding" any action or unwinding any decision. To the contrary, denying the SEC's pending application to enforce the administrative subpoena would constitute *prospective* action under black-letter law. *See, e.g.*, *Dignity Health v. Dep't of Indus. Rels., Div. of Lab.*

*Standards Enf't*, 445 F. Supp. 3d 491, 500 (N.D. Cal. 2020) (request denying enforcement of an administrative order is "properly characterized as prospective") (citation omitted).

In this respect, Mr. Musk is almost identically situated to the party that opposed the civil investigative demand in *Seila Law*, which the Supreme Court determined could not be enforced after the Court found a removal-power violation (unless the agency ratified the decision, which the SEC has not suggested it would do here). *Seila Law*, 140 S. Ct. at 2194, 2197, 2208, 2211. If this Court finds a similar removal-power violation, it should decide this case the same way. At a minimum, the Court should stay this proceeding pending the Supreme Court's decision in *Jarkesy*—which will likely be decided by the end of June and may contain dispositive direction on both the scope of the removal power and the appropriate remedy for a violation. *See* Mot. 23–24.[3]

## CONCLUSION

This Court should decline to adopt the R&R and should deny the Commission's application to enforce the subpoena. In the alternative, the Court should stay this proceeding pending the Supreme Court's decision in *Jarkesy*.

---

[3] The SEC asserts that the Supreme Court's forthcoming decision in *Jarkesy* is unlikely to affect the outcome here, but that position depends on the premise that Enforcement Staff are not officers, Opp. 11 n.5—a premise that is incorrect for the reasons explained above. The SEC does not dispute that the Supreme Court's resolution of *Jarkesy* will be highly relevant to this case if this Court determines that the Enforcement Staff are officers.

| | |
|---|---|
| Dated: March 22, 2024 | Respectfully submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | */s/ Alex Spiro* |
| | Alex Spiro (*pro hac vice*) |
| | 51 Madison Ave, 22nd Floor |
| | New York, NY 10010 |
| | Telephone:  (212) 849-7000 |
| | Facsimile:  (212) 849-7100 |
| | alexspiro@quinnemanuel.com |
| | |
| | Christopher G. Michel (*pro hac vice*) |
| | Rachel G. Frank (California Bar No. 330040) |
| | 1300 I Street NW, Suite 900 |
| | Washington, D.C. 20005 |
| | Telephone: (202) 538-8000 |
| | Facsimile: (202) 538-8100 |
| | christophermichel@quinnemanuel.com |
| | rachelfrank@quinnemanuel.com |
| | |
| | *Attorneys for Elon Musk* |