MONIQUE C. WINKLER (Cal. Bar No. 213031)
BERNARD B. SMYTH (Cal. Bar No. 217741)
  SmythB@sec.gov
ROBIN ANDREWS (Ill. Bar No. 6285644)
  AndrewsR@sec.gov
44 Montgomery Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-2500

Attorneys for Applicant Securities and Exchange Commission

QUINN EMANUEL URQUHART & SULLIVAN, LLP
ALEX SPIRO (*pro hac vice*)
  alexspiro@quinnemanuel.com
Rachel G. Frank (Cal. Bar No. 330040)
  rachelfrank@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000

Attorneys for Respondent Elon Musk

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Applicant,<br><br>v.<br><br>ELON MUSK,<br><br>Respondent. | Case No. 3:23-mc-80253-JSC<br><br>**JOINT STATEMENT REGARDING THE SEC'S REQUEST FOR SANCTIONS AGAINST RESPONDENT FOR HIS FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY** |

JOINT STATEMENT REGARDING THE SEC'S REQUEST FOR SANCTIONS AGAINST RESPONDENT FOR HIS FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. Musk
Case No. 23-mc-80253-JSC

I. **Statement of Securities and Exchange Commission**

  A. **Chronology**

  On May 14, 2024, the Court ordered Respondent Elon Musk ("Musk") to appear for investigative testimony before the SEC staff. Dkt. No. 48. On May 29, 2024, the parties agreed to conduct that testimony on September 19, 2024. Andrews Decl. at ¶ 2. On May 31, 2024, the Court ordered that, among other things, "The agreed-upon date and time for [Musk's] testimony may be rescheduled only upon written consent of the SEC or order of the Court, and [Musk] shall not seek delay or rescheduling of the testimony absent an emergency that [Musk] did not create and could not avoid." Dkt. No. 53 ("the May 31, 2024 Order") at 3. In late July 2024, Musk's counsel sought the SEC's consent to reschedule the September 19 date; the SEC agreed to reschedule the testimony for September 10, 2024 at 9 a.m. in the SEC's Los Angeles office. Andrews Decl. at ¶ 3.

  On September 9, three SEC counsels flew to Los Angeles for Musk's testimony: two from San Francisco, and one from Washington, DC. *Id.* at ¶ 4. Shortly before 6 a.m. on September 10, Musk's counsel sent a letter to SEC counsel, notifying the SEC that Musk had traveled to the East Coast for a SpaceX rocket launch and would not be attending the testimony. *Id.* at ¶ 5. Less than three hours later, SEC counsel offered to reschedule the testimony for the following day, noting that this "allows for more than sufficient time for Mr. Musk to return to Los Angeles, given the approximately four-hour flight time" from Florida. *Id.* at ¶ 6. The SEC also stated: "If Mr. Musk does not promptly agree to appear tomorrow at 9 a.m. at the SEC's Los Angeles office, we will bring this matter to Judge Corley today. Among other things, we may seek sanctions against Mr. Musk." *Id.*

  Musk's counsel rejected September 11 but offered to reschedule the testimony to "dates in the next month." *Id.* at ¶¶ 7, 10. SEC counsel sent a letter to Musk's counsel offering any date in that timeframe: "We are available to take Mr. Musk's testimony in the SEC's San Francisco office on any date on or before October 11, 2024." *Id.* at ¶ 10. On September 16, Musk's counsel declined to agree to a date "in the next month" as previously offered, instead proposing October 29 or October 30, only in the SEC's Los Angeles office, and only if the SEC withdrew its request for a discovery conference with the Court. *Id.* SEC counsel declined this offer. *Id.*

  On September 18—only after the Court's courtroom deputy indicated that the Court would schedule a discovery hearing on this issue—Musk's counsel finally offered a testimony date in early October. *Id.* at ¶ 11. During the September 27, 2024 informal discovery hearing, the Court made clear to Musk's counsel that Musk needed to comply with the May 31, 2024 Order and appear on October 3. Musk appeared for testimony on October 3, 2024 at the SEC's Los Angeles office. *Id.*

  The parties have conferred regarding the SEC's intent to seek sanctions. *Id.* at ¶ 12. To resolve this dispute, the SEC asked Musk to stipulate to an order: (1) finding that Musk violated the May 31, 2024 Order when he failed to appear for his September 10 testimony; and (2) ordering that Musk pay the SEC $2,923.09 to compensate the SEC for its travel costs for the September 10 testimony. *Id.* Musk agreed to pay the $2,923.09, but refused to agree to a finding that he violated the May 31, 2024 Order. *Id.* The SEC declined this counteroffer. *Id.*

JOINT STATEMENT REGARDING THE SEC'S REQUEST
FOR SANCTIONS AGAINST RESPONDENT FOR HIS
FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. Musk
Case No. 23-mc-80253-JSC

-1-

**B. The Court Should Find That Musk Violated the May 31, 2024 Order and Impose Sanctions totaling $2,923.09 for the SEC's Travel Costs**

As the Court has already stated, Musk violated the May 31, 2024 Order. That Order required that Musk seek "written consent of the SEC or order of the Court" to modify the date of his testimony. Musk sought neither and did not appear at the scheduled testimony, a direct violation of the Court's order. Musk's excuse itself is not credible: SpaceX had already announced that it was targeting a Tuesday, September 10 morning launch *two days earlier*. *Id.* at ¶ 9. As the company's Chief Technical Officer, Musk surely was already aware by then that SpaceX was targeting the morning of his SEC testimony for the launch. On Monday, September 9, Musk was interviewed at a conference in Los Angeles, during which he discussed the SpaceX launch and stated that if the weather held up, "I'm going to leave here to head to Cape Canaveral." *Id.* Despite this advance knowledge, Musk did not notify the SEC of his intent to attend the launch until three hours before his testimony was to begin, and after the SEC spent nearly three thousand dollars to fly three attorneys to Los Angeles.

Musk ultimately appeared for testimony on October 3—after a September 20 joint filing (Dkt No. 55) and the September 27 hearing in which the Court made clear that Musk needed to appear. Musk's appearance on October 3, however, does not nullify his violation on September 10. *See Jazwares, LLC v. Perez*, 2022 U.S. Dist. LEXIS 73937, at *6 (N.D. Cal. Apr. 22, 2022) ("Perez did eventually sit for his deposition on March 29, approximately seven weeks after the court-ordered date. This order finds, however, that this does not render his initial failure to appear a technical violation. Indeed, Perez thumbed his nose at the process until alerted to the risk he might be held in federal custody until he provided testimony."); *Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, 2019 U.S. Dist. LEXIS 156070, at *21-22 (C.D. Cal. July 31, 2019) ("Although Soskin ultimately appeared for the deposition on June 12, 2019, Soskin has not provided an 'adequate excuse' for his failure to comply with the Subpoena and has failed to demonstrate that he was unable to comply with the Subpoena."). Musk's violation of the May 31, 2024 Order on September 10 was in no way a "technical" violation: he cannot show that he was *unable* to comply. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983).

A finding by this Court that Musk violated the May 31, 2024 Order is important to effect deterrence against future violations and affirm the authority of the Court. Musk failed to appear before the SEC twice in this matter: in September 2023, in defiance of a lawful administrative subpoena, and in September 2024, in defiance of a clear court order. Only after the SEC sought Court intervention (again) and stated its intent to seek sanctions did Musk finally appear. The Court should make clear that disregard for court orders comes with real consequences. Finding that Musk violated the May 31, 2024 Order is appropriate and necessary to deter Musk—and others who consider disobeying court orders to appear for SEC testimony—from future violations of court orders. *Cf. NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (one purpose of sanctions is to "deter those who might be tempted to such conduct in the absence of such a deterrent"); *Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, 2019 U.S. Dist. LEXIS 156070, at *12-13 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987) ("The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on the other Branches.")

JOINT STATEMENT REGARDING THE SEC'S REQUEST
FOR SANCTIONS AGAINST RESPONDENT FOR HIS
FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. Musk
Case No. 23-mc-80253-JSC

-2-

Musk has agreed to pay the SEC $2,923.09: the total cost of its attorneys' travel for the September 10 testimony. Such sanctions are appropriate and routinely ordered. *See Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both.") (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)); *Jazwares, LLC*, 2022 U.S. Dist. LEXIS 73937, at *5-7 (awarding attorneys' fees and costs when witness failed to appear for his deposition); *Societe Civile Succession Richard Guino v. Renoir*, 305 Fed. Appx. 334, 338 (9th Cir. 2008) (same).

But only ordering reimbursement of travel costs would not serve as a real deterrent for many individuals considering violating a court order—much less someone of Musk's extraordinary means. Reimbursement of the SEC's travel costs is inadequate because it does not fully address Musk's conduct and is inconsequential to him. A finding that Musk violated the May 31, 2024 Order, however, would make clear that Musk's failure to appear was not a trivial matter, and appropriately tether the monetary sanction to his misconduct. The SEC thus asks this Court to hold Musk accountable and find that he violated the May 31, 2024 Order, in addition to ordering reimbursement of the SEC's travel costs.

Dated:  October 25, 2024          Respectfully submitted,

/s/ Robin Andrews
ROBIN ANDREWS

*Attorney for Securities and Exchange Commission*

JOINT STATEMENT REGARDING THE SEC'S REQUEST FOR SANCTIONS AGAINST RESPONDENT FOR HIS FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. Musk
Case No. 23-mc-80253-JSC

-3-

## II. Statement of Respondent Elon Musk

Mr. Musk appeared for and provided testimony to the SEC on October 3—as required by this Court's order (Dkt. 53) and as he committed to do after rescheduling the September 10 testimony due to an emergency. Oct. 25, 2024 Spiro Decl. ¶ 5. Mr. Musk then offered to fully reimburse the SEC for the costs of its attorneys' travel for the September 10 testimony. *Id.* ¶ 6. Rather than take yes for an answer and move on with its investigation, the SEC has indicated that it will ask this Court to enter a sanction finding that Mr. Musk violated the Court's order and compelling him to provide the same relief that he has offered voluntarily. The SEC's position is inexplicable by any valid reason, and this Court should reject it.

As a threshold matter, there is no need for this Court to decide whether Mr. Musk violated its order. The object of that order—and indeed this entire proceeding—was to require a third round of testimony from Mr. Musk in the SEC's underlying investigation. Mr. Musk provided that testimony on October 3, testifying for roughly four hours in Los Angeles. Oct. 25, 2024 Spiro Decl. ¶ 5. The SEC suggested that Mr. Musk was cooperative, *id.*, and has not contended that his testimony was in any way insufficient. The SEC has accordingly accomplished what it came to this Court to do. Any request for a sanction to ensure Mr. Musk's compliance with the Court's order would be moot, because Mr. Musk has complied with that order by providing the required testimony. *See, e.g.*, *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (dispute over coercive sanctions moot because defendant "purge[d] himself of contempt by making the required payments").

The SEC's request for a sanction is presumably aimed at securing reimbursement for the costs of the rescheduled September 10 testimony. But this Court's intervention is not necessary for that purpose either, because Mr. Musk has offered to provide all of the compensation the SEC has requested. Oct. 25, 2024 Spiro Decl. ¶ 6. The only reason the SEC has not already obtained that relief is that it rejected Mr. Musk's proposal. *Id.* ¶ 7. As a jurisdictional matter, it is dubious whether the Court can consider a request for sanctions given Mr. Musk's agreement to provide the relief the SEC seeks; "federal courts exist to resolve real disputes, not to rule on a plaintiff's entitlement to relief already there for the taking." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 175 (2016) (Roberts, C.J., dissenting); *see also Deutsche Bank Nat. Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014) (the "doctrine of prudential mootness permits a court to" to dismiss a case "not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief" (cleaned up)). As a practical matter, the answer is straightforward: there is no sound reason to decide whether Mr. Musk violated the Court's order given that he has now complied with that order and offered all of the compensation the SEC seeks. And it is a "cardinal principle of judicial restraint" that "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

Finally, a sanction is unwarranted because Mr. Musk did not violate the Court's order. The order provided in relevant part that "[t]he agreed-upon date and time may be rescheduled only upon written consent of the SEC or order of the Court, and [Mr. Musk] shall not seek delay or rescheduling of the testimony absent an emergency that [he] did not create and could not avoid." Dkt. 53 at 2. Here, the testimony was rescheduled from September 10 to October 3 "upon written consent of the SEC." *Id.*; *see* Oct. 25, 2024 Spiro Decl. ¶ 4. And Mr. Musk did not "seek delay or rescheduling of the testimony absent an emergency that [he] did not create and could not avoid." Dkt. 53 at 2. He sought rescheduling of the September 10 testimony only because his presence was required for the

JOINT STATEMENT REGARDING THE SEC'S REQUEST  
FOR SANCTIONS AGAINST RESPONDENT FOR HIS  
FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. MUSK  
CASE NO. 23-mc-80253-JSC

-4-

Polaris Dawn launch in Cape Canaveral, Florida—the timing of which was dependent on shifting weather conditions that could only be determined with certainty very close to the launch time. *See* Oct. 25, 2024 Spiro Decl. ¶ 3; Keech Decl., Dkt. No. 55-4, ¶¶ 5-7.

The SEC does not dispute that it provided written consent to the rescheduling of the September 10 testimony or that Mr. Musk sought the rescheduling because of an emergency beyond his control. The SEC's contention that Mr. Musk violated the order instead seems to turn on the premise that Mr. Musk should have provided greater advance notice of the potential emergency. But the Court's order does not contain a notice requirement, so failing to provide notice cannot be the basis for finding a violation of the order. Moreover, it is unclear what notice the SEC believes Mr. Musk should have provided. As of September 8, two days before the scheduled testimony, "there was only a 10% chance that the weather would be appropriate to allow for the mission to proceed on September 10." Keech Decl., Dkt. No. 55-4, ¶ 7. Conceivably, Mr. Musk could have informed the SEC on September 8 that there was a 10% chance he would not be able to appear on September 10 because of the Polaris Dawn launch. But nothing in the Court's order suggests that such forecasts are required, and it is not evident how such information would have been helpful to the SEC if Mr. Musk had provided it. *See id.* (explaining that the Polaris Dawn launch had been rescheduled multiple times since its initial target date of August 26).

At the very least, Mr. Musk has advanced a good-faith interpretation of an ambiguity in the order (the proper mechanism for addressing a potential-but-uncertain emergency), and a sanction for any arguable violation of the order is unwarranted—particularly given that Mr. Musk promptly rescheduled the testimony and complied with the order. *See, e.g.*, *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) ("if a defendant's action appears to be based on a good faith and reasonable interpretation of (the court's order), he should not be held in contempt") (cleaned up); *SEC v. Volkswagen Aktiengesellschaft*, 19-cv-01391-CRB (AGT), Dkt. No. 124, (N.D. Cal. Apr. 21, 2023) (Tse, J.) (denying adverse inference sanction for failing to produce employee for deposition because defendant did not act in bad faith); *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 137 (D.N.H. 2005) (sanctions not appropriate when deposition was rescheduled due to a family medical emergency). The Court should accordingly deny the SEC's request for a sanction and end this satellite litigation.

Dated: October 25, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Alex Spiro
    Alex Spiro

*Attorney for Elon Musk*

JOINT STATEMENT REGARDING THE SEC'S REQUEST FOR SANCTIONS AGAINST RESPONDENT FOR HIS FAILURE TO APPEAR FOR COURT-ORDERED TESTIMONY

SEC v. MUSK
CASE NO. 23-MC-80253-JSC

-5-